THE GATES CO., APPELLANT, *v.* HOUSING APPEALS BOARD OF THE CITY OF COLUMBUS ET AL., APPELLEES.

[Cite as Gates Co. v. Housing Appeals Board, 10 Ohio St. 2d 48.]

(No. 40474—Decided April 5, 1967.)

*Mr. Harold F. Adams* and *Mr. John M. Adams,* for appellant.

*Mr. John C. Young,* city attorney, *Mr. Alba L. Whiteside* and *Mr. William J. Melvin,* for appellees.

SCHNEIDER, J. More often than not, before the court can intelligently approach a controversy for what it actually is, it is necessary to determine what it is not. This is such a case.

First, there is nothing in the Columbus Housing Code from which an inference may be drawn that the failure of any building to conform to its requirements constitutes an imminent threat to the health, safety, morals or welfare of the public generally. It is relevant in this connection to note that the Code permits, among other things, one complete set of bathroom facilities to serve as many as ten unrelated persons residing within a rooming house. Furthermore, the Code provides that "in any urban renewal area presently approved by city council the bathroom requirements shall become effective *one year* after the adoption of the Housing Code * * *. In any urban renewal area designated by council within the next *three years* the bathroom requirements shall become effective *one year* thereafter." (Emphasis supplied.)

Neither is there an administrative finding, nor is it the basis of the city's claim to the right to enforce the Code against the property in question, that the failure of that property to conform thereto presently endangers the public health or the health of its occupants in particular. In short, neither the Code,

nor the order against this particular building pursuant thereto, constitutes an attempt to eliminate a present nuisance. Therefore, we do not reach the problem which confronted us in, or the implications of, *Solly* v. *Toledo*, 7 Ohio St. 2d 16. See, also, *Akron* v. *Klein*, 171 Ohio St. 207, and *Benjamin* v. *Columbus*, 167 Ohio St. 103. Except for certain roof repairs, the need for which is not questioned, the building is structurally sound and well-maintained. Nor does Columbus complain that the existing plumbing or its fixtures are not functioning acceptably.

Second, the city does not find it necessary, and a public purpose, to appropriate the property for the reason that its facilities do not measure up to minimum housing standards and to pay the owner the equivalent of its present fair market value. See *State, ex rel. Bruestle*, v. *Rich*, 159 Ohio St. 13. In this case, urban renewal is being attempted without expense to the city other than administrative costs.

Third, the city does not propose to proceed with the improvements upon the owner's failure, to assess the cost against the property and thus to lend its credit to the owner during the years in which assessment bonds of the city would be outstanding. If that were the case, the sole available defense to complying with the order *might* well be that the property would not be "enhanced in value as a result of the improvement in an amount equal to the amount of the assessment" (syllabus, paragraph five, *Schiff* v. *Columbus*, 9 Ohio St. 2d 31) or to the cost of the improvement.

The owner has not attempted to meet the burden of proof of that defense and relies solely on the fact, which must be admitted on this record, that it is unable to finance the improvements demanded, which may well cost as much as 50 per cent of the present fair market value of the property.

We are convinced that the foregoing is sufficient to prevent the enforcement of the Code, and the order of compliance therewith, against the property involved in this case. The owner is not being called upon to install fire escapes beyond the third floor, as in *Cincinnati* v. *Steinkamp*, 54 Ohio St. 284, 292, wherein Judge Spear properly characterized a building not so equipped as, "speaking in a general sense, a nuisance." The owner herein, however, is faced with the alternative of supplying the

lack of an inconvenience in order to conform the existing building to a standard subsequently imposed by what may otherwise be a proper exercise of the police power, or be subject to a fine of at least $25 nor more than $500 for each and every day that the nonconformity continues. The Housing Code apparently contains no other enforcement device.

In *Akron* v. *Chapman*, 160 Ohio St. 382, wherein Akron attempted to abate a use antedating its zoning ordinance and not in conformity thereto, we held in the second paragraph of the syllabus that "[t]he right to continue to use one's property in a lawful business and in a manner which does not constitute a nuisance and which was lawful at the time such business was established is within the protection of Section 1, Article XIV, Amendments, United States Constitution, and Section 16, Article I of the Ohio Constitution, providing that no person shall be deprived of life, liberty or *property* without due process of law."

Courts are obliged to "proceed with great caution and will not interfere with the use of property by the owner thereof, unless such use is unreasonable, the injury material and actual, not fanciful or *sentimental*." (Emphasis supplied.) *McCarty* v. *Natural Carbonic Gas Co.*, 189 N. Y. 40, 81 N. E. 549. "Almost every legal concept or principle is found to be but the terminal of a scale which shades at its opposite extremity into another of exactly contrary tendency, and the line between the two oscillates from specific case to case according to the context. Thus the law of nuisance plays between the principle that every person is entitled to use his property for any purpose that he sees fit, and the opposing principle that every man is bound to use his property in such a manner as not to injure the property of his neighbor." Dickinson, Administrative Justice and the Supremacy of Law in the United States, page 135.

Columbus adopts Judge Spear's consideration of a nuisance in *Cincinnati* v. *Steinkamp, supra* (54 Ohio St. 284), at page 289, to argue that "the owner is not prevented from selling it [the property], mortgaging it, devising it, or giving it away." Yet, until the appellant, as an unwilling seller of property not containing or amounting to a nuisance, finds a buyer willing to pay the present value of the property plus a sum equal to one

half of that value for improvements not amounting to the correction of a nuisance, it is subject to fines at the minimum rate of $9,125 per year. To this extent, the Code is implicit with confiscation as applied to the property here involved.

To hold otherwise would be to permit the compulsive improvement of any real property merely upon a legislative finding that the improvement is required to promote the public health, safety or morals, rather than upon a factual determination that the continued use of the property without improvement immediately and directly imperils the public health, safety or morals.

The judgment of the Court of Appeals is reversed and the judgment of the Common Pleas Court, that the order appealed from is unconstitutional, is affirmed.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and BROWN, JJ., concur.