LAISY ET AL. *v.*
CITY OF SHAKER HEIGHTS.

(No. 91985 — Decided May 5, 1986.)

### Court of Common Pleas of Cuyahoga County.

*Rachel E. Geiersbach,* for plaintiffs.

*Margaret Anne Cannon,* director of law; *John B. Robertson;* and *Neil E. Roberts,* for defendant Shaker Heights.

JAMES J. MCMONAGLE, J.  On May 10, 1985, the plaintiffs, Mr. and Mrs. Albert W. Laisy, filed a three-count complaint against the city of Shaker Heights and its Director of Public Service. Thereafter, the action against the Director of Public Service was dismissed without prejudice.

In Count I, the plaintiffs allege that the city failed to keep the sewer system free of obstruction and failed to properly maintain and inspect the sewer, resulting in flood damage to plaintiffs' property at 17915 Shaker Boulevard.

Count II of the complaint seeks declaratory and injunctive relief. The plaintiffs ask this court to declare that the city of Shaker Heights cannot retroactively, unlawfully, and without due process, apply Shaker Heights Ordinance No. 76-66 to plaintiffs' property by requiring that certain of the house's storm lines be disconnected from the city's sanitary sewer and reconnected to the city's storm sewer. Plaintiffs also contend that the enforcement of Ordinance No. 76-66 violates the Constitution of Ohio and the Shaker Heights ordinances which provide that laws should not be applied retrospectively unless the law so states.

Count III seeks declaratory relief and damages because the city arbitrarily, capriciously and unreasonably attempted to impose Ordinance No. 76-66 on plaintiffs; and, because the city, while paying ninety percent of the cost of raising the elevation of sewer lines and connections for many Shaker Heights property owners, has refused to pay such costs as to plaintiffs, in violation of the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution.

Hearings were held on October 17, 1985 and October 22, 1985 on the declaratory judgment and injunction portions of Counts II and III, with this court sitting as trier of both the facts and the law. Count I, encompassing an action for damages, is being held in abeyance pending disposition of Counts II and III.

The home, located at 17915 Shaker Boulevard, was purchased by the plaintiffs on August 11, 1977. They first experienced basement flooding after the storm of August 19, 1978.

On June 26, 1980, a dye test and an engineering investigation were performed. As to plaintiffs' residence, the recommendation was that the house storm drains, linked to the sanitary sewer, be removed and connected to the storm sewer. Alternatively, it was suggested that overhead basement plumbing be installed.

The sanitary sewer serving plaintiffs' property is the original one installed in 1914. It is an eight-inch pipe set eight feet below grade. The companion storm sewer was a ten-inch pipe set six feet and two inches deep. In 1957, the city installed a new storm sewer to serve Shaker Boulevard. It is located in the median strip and is a twenty-one inch pipe set nine feet deep.

The 1916 Cleveland Code, Section 1120-48, provided that roof leaders (*i.e.,* downspouts) and surface and ground water drains "shall not be connected to a building sewer or drain which discharges into a sanitary sewer *intended* for the carriage of sewage on-

ly." (Emphasis added.) In 1925, Shaker Heights incorporated by reference the 1916 Cleveland Code into its Building Code. In 1927, the plaintiffs' house was built. Despite the fact that the footer drains and the downspouts empty into the sanitary sewer, permits were obtained and the sewers and plumbing were approved.

Subsequently, in 1931, the city of Shaker Heights enacted its own Plumbing Code. Section 148, like the 1916 Cleveland Code, provided that roof leaders (downspouts) and ground drains shall not be connected to a building sewer or drain which discharges into a sanitary sewer intended for the carriage of sewage only.

A 1949 city ordinance prohibited any downspout discharging into any sanitary system and any storm sewer outlets connecting with a sanitary sewer. Such conditions were declared nuisances; the Director of Public Service was and is authorized to enter upon the land, test downspouts, and abate the nuisance. The defendant city has never ordered any changes on plaintiffs' property based upon the requirements of the 1949 ordinance, which is still in effect today.

In 1970, Ordinance No. 70-133 was passed, providing that the city would pay sixty percent of the cost of the improvements described in Section 1 of the ordinance, to wit: raising the elevation of storm and sanitary sewer lines and connections and interior plumbing and installing sump pumps in and around buildings. In 1973, Ordinance No. 73-160 was passed, raising the city's payment to ninety percent of the cost of said improvements.

During the period between 1975 and 1978, a program of smoke and dye testing was undertaken to determine if downspouts, window and yard drains, etc., drained into the city's sanitary system. Form letters were sent out advising property owners of the test results. The engineering analysis concentrated upon cost-effective ways to keep extraneous water or storm water out of the sanitary sewer system.

Yet another ordinance was passed in 1976 providing that downspouts, roof, driveway, and yard drains shall not be connected to any sanitary sewer, but shall be connected to storm sewers where independent storm sewers are available. This is the ordinance the city of Shaker Heights is attempting to enforce against the plaintiffs. Ordinance No. 76-66 provides, in part, that:

"WHEREAS, the Codified Ordinances of the City of Shaker Heights currently prohibit surface water connections to discharge into sanitary sewers, and

"WHEREAS, recent engineering studies detected a number of such illegal connections which cause overloading of the sanitary sewers and backups of waste materials into basements of property owners, and

"WHEREAS, such backups must be terminated in order to prevent dangerous sanitary and health conditions as well as extensive damage to property;

"NOW, THEREFORE, BE IT ORDAINED by the Council of the City of Shaker Heights, State of Ohio:

"*Section 1.* Section 123.08 of the Administrative Code of the Codified Ordinances of the City of Shaker Heights is hereby enacted to read as follows:

"123.08 STORM AND SANITARY SEWER CONNECTIONS.

"A. *Downspouts, Roof, Driveway, and Yard Drains.*

"Downspouts, roof, driveway, and yard drains shall not be connected to any sanitary sewer, but shall be connected to storm sewers where independent storm sewers are available.

"B. *Window Wells.*

"All window wells shall be connected to the storm sewers. In the alternative, the window well masonry, or earth around the masonry, may be built up to eight inches (8") above grade so as to prevent drainage of storm waters into the sanitary sewers. "* * *

"E. *Corrective Order and Expenses Therefor.*

"If investigations and tests reveal that downspouts, roof, driveway, yard drains, or any surface waters flow into any sanitary sewer, or there are cross connections between storm and sanitary sewers, or any sewer is clogged, broken, or otherwise in need of repair, the Director of Service shall order the abatement of such condition. Such order shall require connection of downspouts, roof, driveway, yard drains, and any other collectors of surface water to flow into the available storm sewer within a reasonable time, weather permitting, but in any case shall not exceed six (6) months from the date of notice to abate said condition. * * *"

As was previously recited, the plaintiffs purchased their house in August 1977. Under the city's point-of-sale ordinance, either the seller must correct all housing violations or the buyer must agree to assume and correct the violations within a reasonable time. Shaker Heights made a point-of-sale inspection of the Shaker Boulevard residence, and the plaintiffs agreed to assume all housing violations. Nevertheless, the city did not report that the house the plaintiffs intended to buy had any sewer violations.

Today, the defendant city is attempting to enforce compliance with Ordinance No. 76-66, to compel the plaintiffs to alter their fifty-eight-year-old storm system so that it drains into the city's storm sewer, rather than into the city's sanitary sewer. The defendant's plumbing expert has estimated that it would cost $9,800 to relocate and reconnect the sewer lines at plaintiffs' house.

At the outset, the plaintiffs submit that Ordinance No. 76-66 is unconstitutional as being arbitrary, discriminatory and violative of the Equal Protection Clause.

The legislation at issue is not discriminatory. Clear and convincing evidence demonstrates that hundreds of residences, in addition to that of the plaintiffs, were dye-tested, violation notices were sent when necessary, and engineering determinations were made as to the feasibility of elevating the plumbing.

A piece of legislation is unconstitutionally arbitrary *only* if it bears *no* substantial relationship to the public health, safety or welfare. The city asserts that this ordinance was enacted as an emergency measure to prevent dangerous sanitary and health conditions caused by backups of sanitary sewers during storms. The constitutional tenet of separation of powers, reinforced by substantial case law, precludes judicial review of the legislative determination of emergency. Ordinance No. 76-66 meets the requirements set down in *Youngstown* v. *Aiello* (1951), 156 Ohio St. 32, 45 O.O. 45, 100 N.E. 2d 62:

"This court has heretofore specifically held that where a legislative measure, passed either by the General Assembly of the state or by the council of a municipality, is declared to be an emergency measure necessary for the preservation of the public peace, health or safety and sets forth the reasons for the immediate necessity thereof, such determination is not reviewable by the courts, the duty and responsibility of such determination having been confided to the legislative branch of the government." *Id.* at 36, 45 O.O. at 47, 100 N.E. 2d at 65.

Thus, the defendant city prevails on the issue of the non-arbitrariness of the ordinance.

The plaintiffs' third challenge arises out of their allegation that, while the city has paid ninety percent of the cost of raising the elevation of sewer lines and connections for many Shaker Heights property owners, it has refused to pay such costs as to plaintiffs, in violation of the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution. Again, the plaintiffs' challenge cannot be sustained. According to Stipulated Exhibit M, since 1973, the plaintiffs have never requested overhead plumbing, despite the fact that an engineering expert suggested it as an alternative solution. Moreover, the plaintiffs' system must be disconnected from the sanitary system before the city-subsidized improvement can be undertaken. Therefore, any request now is premature. In light of these facts, it can hardly be said that the plaintiffs have been treated in an unconstitutionally disparate manner.

The city of Shaker Heights feels justified in compelling plaintiffs to revamp their sewer system on the basis that the conditions at 17915 Shaker Boulevard constitute a nuisance. However, the city of Shaker Heights has many combination storm and sanitary sewers. The plaintiffs' sanitary pipeline does not drain into the city's storm system; so, no pollution is caused in contravention of the EPA standards or the Clean Water Act. Although the plaintiffs' home suffered damage, no flooding was caused to neighboring residences. Since the city cleaned its sewer lines in January 1981, there has been no further flooding of plaintiffs' basement. Thus, the situation does not warrant enforcement of the ordinance against Mr. and Mrs. Laisy. No factual finding of nuisance has ever been made, and this court must adhere to the law as it has been recited in the syllabus of *Gates Co.* v. *Housing Appeals Bd.* (1967), 10 Ohio St. 2d 48, 39 O.O. 2d 42, 225 N.E. 2d 222:

"In the absence of a determination that the continued use of improved real property without conforming to building standards subsequently adopted would constitute a nuisance, improvements necessary to comply with the new standards may not constitutionally be compelled by a public agency against the private owner of such property."

Application of Ordinance No. 76-66 would necessitate costly alterations of plaintiffs' sewer lines and connections which have been in place nearly sixty years. To now require those changes to be made would be an improper, retroactive application of the law. Retrospective laws are not generally favored by the courts:

"* * * Upon principle, every statute which takes away or impairs vested rights acquired under existing laws, or which creates a new obligation, imposes a new duty, or attaches a new disability in respect to past transactions or considerations, must be deemed retrospective." 50 Ohio Jurisprudence 2d (1961) 316, Statutes, Section 338.

When the plaintiffs' house was built, there was no designation that the sanitary sewer system was only for sewage and not storm water. Now, a series of ordinances has mandated the segregation of the storm system and the sanitary system. In order for the plaintiffs' system to drain properly, Mr. and Mrs. Laisy will have to expend a substantial amount of money. The Shaker Heights ordinance cannot be enforced here, in keeping with the general rule that laws are to be construed as prospective, especially where

such a construction will avoid hardship.

One of the defenses asserted by the city to this cause of action is failure to exhaust administrative remedies. Admittedly, Ordinance No. 76-66 makes a provision for appeal to the Board of Building Code Appeals by any person aggrieved by the "order." On June 14, 1984, plaintiffs received a letter from Mr. Ugrinic, Director of Public Service, which reads in pertinent part:

"It is most important the storm water be removed from the sanitary system and that you comply with ordinance #76-66, a copy of which is enclosed for your reference. Further, we ask that this compliance be met within 90 days after receipt of this letter."

This court makes the express determination that the above-referenced letter is not an order. The administrative appeal process was not triggered by a letter *requesting* compliance.

It is the opinion of this court that the crux of plaintiffs' case is the issue of estoppel — whether or not the city is estopped from enforcing Ordinance No. 76-66 against these plaintiffs. Defendant Shaker Heights is in error when it posits that laches and estoppel do not apply to municipalities. A municipality acts through, and is bound by, the actions of its employees, officers or representatives. Of course, a city is not bound by the behavior of an employee which is outside the scope of his duties:

"* * * That the law of estoppel may be applied to a municipality is clear, the only limitation, other than the general law of estoppel, being that it is confined to cases not involving things *ultra vires.*" *Strahan* v. *Aurora* (1973), 38 Ohio Misc. 37, 42, 67 O.O. 2d 215, 218, 311 N.E. 2d 876, 879.

The Director of Public Service issued letters to the plaintiffs and undertook dye testing and other procedures as he was legally empowered by ordinance. Therefore, the concept of *ultra vires* behavior is not a bar to the application of estoppel principles herein.

Since 1916, legislation has reflected a desire to separate storm sewer and sanitary sewer systems in the city of Shaker Heights. In 1949, the Director of Public Service was authorized to abate any condition in which the systems were combined. The 1976 ordinance repeated the idea of independent sewer lines. Plaintiffs' house was built in 1927. Plaintiffs purchased the home in 1977, and committed themselves to correct any violations pointed out to them. Not until flooding problems came to the attention of plaintiffs and defendant in 1981 did the city try to require costly correction. The plaintiffs had the right to rely on the fact that plumbing permits were issued in 1927 for their home. Furthermore, it was reasonable for them to feel secure when no point-of-sale violations were noted in 1977. The plaintiffs had the right reasonably to rely upon the city's tacit representations that all was well with their house and its appurtenances. They will suffer significant damage now if they are charged for the repairs necessary to comply with the ordinance.

It is therefore ordered, adjudged and decreed that the defendant is estopped from enforcing Shaker Heights Ordinance No. 76-66 against the plaintiffs, and that the city of Shaker Heights cannot retroactively and unlawfully apply said ordinance to plaintiffs' property by requiring that certain of their house's storm lines be disconnected from the city's sanitary sewer and reconnected to the city's storm sewer.

*Judgment accordingly.*