JOURNAL ENTRY AND OPINION
Plaintiffs-appellants, Shaker North, Ltd., SPL Property Ltd., and Huntleigh Ltd. Poinciana Apartments ("owners"), appeal the trial court's ruling upholding the City of Cleveland Board of Building Standards and Building Appeals' ("board") denial of their request for a variance to exempt their (preexisting) elevators from a code requirement enacted after the elevators were built.
Appellants are owners of apartment buildings equipped with elevators that complied with the building code in effect some sixty years ago. In 1998 and 1999, the owners in three consolidated cases were cited by the City of Cleveland for violations of § 3004.0 regulation A-17.3 of the Ohio Basic Building Code. The regulation requires all elevators to have a "car top operating device, which allows a person standing on top of the elevator car to control its movement. The city states that this device is needed for the protection of inspectors standing on top of the car inspecting it. The space above the elevator car, in its highest position, is just over three feet. Owners requested an exemption from this requirement.
Owners appealed the ruling of the board to the common pleas court, which upheld the board's ruling. They timely filed this appeal.
Owners' first assignment of error states
 I. THE TRIAL COURT ERRED IN FAILING TO APPLY STATUTORILY MANDATED EXEMPTIONS TO THE OHIO BASIC BUILDING CODE § 3004.0 REGULATION A-17.3 REQUIRING CAR TOP OPERATING DEVICES IN ELEVATORS, CONTAINED IN § 4105.13 OF THE OHIO REVISED CODE AND THE CLEVELAND BUILDING CODE §§ 3141.08 AND 3111.02(a)(4).
Owners argue that they should be exempt from the requirements of the elevator code because it provides exceptions to compliance in cases of practical difficulty or undue hardship. Alternatively, they claim they should be exempt because the Cleveland Building Code provides an exemption for buildings of a certain age.
Determining the applicable law in this area requires addressing several different ordinances, codes, and statutes. The Cleveland Building Code 3141.01 expressly incorporates the Ohio Basic Building Code, OAC Chapter4101:2-21, and the Ohio Elevator Code as set forth in OAC Chapters 4101:5-1
to 4101:5-9.[1]
The Cleveland Building Code also states that for all inspections, the tests shall be made in conformity with the rules therefore issued by the Cleveland Board of Building Standards and Building Appeals or any rules of the Ohio Board of Building Standards. Cleveland Building Code 3141.14(c). The Cleveland Building Code incorporates, therefore, the Ohio Basic Building Code, both by its own statement and by its incorporation of the OAC.
We, therefore, must examine the Ohio Basic Building Code to determine the applicable law. The section titled existing elevators and escalators in the Ohio Basic Building Code states [s]ee elevator code listed in `Chapter 35, Referenced Standards.'[2] Chapter 35 indicates that ASME A17.3-93, Safety Code for Existing Elevators and Escalators — with A17.3a-94 Addendum is the governing standard for the elevators which are older existing equipment like the elevators which are the subject of this case.[3]
OAC 4101:5-3-01 incorporates the American National Standards Institute and the American Society of Mechanical Engineers[4] Safety Code for Existing Elevators and Escalators as the approved standards for existing elevators.[5] In part, the ASME standards state [e]xisting installations, as a minimum, shall meet the requirements of this Code. If an existing installation does not meet the requirements of this Code, it shall be upgraded. ASME A 17.3-93 Section 1.2. However, section 1.3 qualifies this rule.
 The purpose of this Code is to provide for the safety of life and limb, and to promote the public welfare.
 Where a requirement, because of practical difficulty, cannot be complied with literally or where its literal application would cause undue hardship, the authority having jurisdiction may, upon proper application, grant exceptions, but only when it is clearly evident that reasonable safety is assured. * * *
This section appears to conflict with section 3141.08 of the Cleveland Building Code, which states in pertinent part, [e]xcept as provided under Section 3141.02 elevators * * * legally installed before July 1, 1979 may be used without being reconstructed to comply with the provisions of OBBC, the Ohio Elevator Code and this Building Code governing new installations * * *. Section 3141.02 provides definitions to be used in applying this section. It defines an existing installation of an elevator as an installation completed prior to June 27, 1949 or one for which the application for a permit was filed with the Commissioner prior to June 27, 1949. Unfortunately, we have no evidence to show what year the buildings in question were built. Although owners' attorney stated at the hearing that all three of these building [sic] are in the 60, 70, 80 year old range, we have no admissible evidence to support that statement. Without evidence of the age of the buildings, we cannot apply this exception to the ordinance in this case. Owners' argument that their buildings are exempt because of this ordinance, therefore, must fail.
Further, the Ohio Basic Building Code supercedes the authority of the city code. The city does not have the authority to permit a condition to exist which the Ohio Basic Building Code forbids. As the Supreme Court of Ohio noted, any `police, sanitary and other similar regulations' that are adopted [by a municipality] * * * cannot `conflict with general laws' enacted by the state. Benjamin v. City of Columbus (1957),167 Ohio St. 103, 108. If the Ohio Basic Building Code is more restrictive than Cleveland's, the Ohio Basic Building Code controls.
If owners are to sustain their claim that their elevators are exempt from the retrofitting requirement, therefore, they must qualify under the exemption described in the elevator code.
The elevator code requirement for a car top operating device, which is the section in dispute, states,
 (a) Elevators with automatic or continuous-pressure operation shall have a continuous pressure button operating switch mounted on the top of the car for the purpose of operating the car solely from the top of the car. * * *
 (b) The means for transferring the control of the elevator to the top-of-car operating device shall be on the car top and located between the car crosshead and the side of the car nearest the hoistway entrance normally used for access to the car top.
ASME A17.3 1996-3.10.3
Compliance with the above section is addressed in both the Ohio Revised Code 4105.13 and the OAC. R.C. 4105.13 states in pertinent part
 Every elevator shall be * * * maintained * * * in accordance with the state laws and rules as are authorized in respect thereto. Where reasonable safety is obtained without complying to the literal requirements of such rules as in cases of practical difficulty or unnecessary hardship, the literal requirements of such rules shall not be required.[6]
Owners do not claim that installation of the car top operating device cannot be complied with literally. Therefore, to qualify for the exception in the Code, owners must prove that installing the car top operating device on the elevators in question would cause undue hardship. Owners claim that the cost of installing the car top operating devices constitutes an undue hardship and that they should, therefore, be granted variances to exclude them from this requirement. The only evidence appellants provide to substantiate this hardship, however, is an estimate that the cost of retrofitting the elevators would be $4,000.[7] They do not provide the court with the value of the building or with the gross or net income of the properties. Without knowing the extent of this cost and the degree of financial burden retrofitting the elevators would impose, it is impossible to determine that fulfilling the requirements of the ordinance would constitute an undue hardship.[8] It is the owners' burden to provide more than an estimate of the cost of the work. Without more, there is not sufficient evidence to say that requiring the appellants to bring their elevators into compliance would cause an undue hardship.
The first assignment of error is without merit.
Owners' second assignment of error states
 II. THE TRIAL COURT ERRED IN UPHOLDING APPELLEE'S RETROACTIVE APPLICATION OF THE OHIO BASIC BUILDING CODE REGULATION, REQUIRING CAR TOP OPERATING STATIONS IN ELEVATORS, TO PRE-EXISTING STRUCTURES, ALTHOUGH SUCH ACTION IS UNCONSTITUTIONAL IN THE ABSENCE OF ANY NUISANCE CREATED BY APPELLANTS' OPERATION OF THE ELEVATORS.
Owners also argue that without a showing that the elevator in its current condition is a nuisance, enforcing the retrofitting requirement would be unconstitutional. Quoting Gates Co. v. Housing Appeals Board (1967), 10 Ohio St.2d 48, owners claim,
 "[i]n the absence of a determination that the continued use of improved real property without conforming to building standards subsequently adopted would constitute a nuisance, improvements necessary to comply with the new standards may not constitutionally be compelled by a public agency against the private owner of such property." (Syllabus. Italics added.)
Appellants' brief at 7. Owners reason that unless the condition of the elevators "`directly imperil the public health, safety, and morals'" the government has no right to force a revised building code on them. Appellants' brief at 7, quoting Gates.
This argument fails for two reasons. First, the police power of the city provides more than enough authority for the city to require a safety modification as long as it is not unreasonable: "the constitutional right of the individual to use private property has always been subservient to the public welfare * * * [and] such use is subject to the legitimate exercise of local police power * * *." Northern Ohio Sign v. Lakewood (1987), 32 Ohio St.3d 316, 318.
Second, the lack of the elevator top operating device constitutes a nuisance per se. OAC 4101:5-3-01(B) adopts the ANSI/ASME A 17.3 1996 Safety Code for Existing Elevators and Escalators. The authority for formulating rules is given to the Board of Building Standards by R.C.4105.011(A), which requires in part that the Board
 [f]ormulate and adopt rules governing the design, construction, repair, alteration, and maintenance of elevators. Such rules shall prescribe uniform minimum standards necessary for protection of the public health and safety * * *.
OAC 4101:5-1-05 requires the inspector to "issue an adjudication order in accordance with section 4105.11 of the Revised Code." R.C. 4105.11
states in pertinent part that the court
 * * * shall not affirm the order of the agency [board of building appeals] unless the preponderance of the evidence before it supports the reasonableness and lawfulness of such order, and of any rules upon which the order of the agency is based in its application to the facts involved in the appeal.
 Failure to comply with the requirements of any order pursuant to this section * * * is hereby declared a public nuisance.
Thus our standard is whether there is a preponderance of evidence supporting the reasonableness and lawfulness of the order. If there is, then the noncompliant elevator is statutorily declared a nuisance.
R.C. 3767.01 defines a nuisance in part as [t]hat which is defined and declared by statutes to be a nuisance * * *. The elevator statute declares, "[f]ailure to comply with the requirements of any order issued pursuant to this section * * * is hereby declared a public nuisance." R.C.4105.11. This rule is incorporated into the Ohio Basic Building Code and the Building Code of the City of Cleveland. The burden, then, is on owners to show that their elevators qualify for an exemption from the safety requirements.Declaring that it would cost $4,000 per elevator to retrofit them does not support exempting the owner from complying with the safety requirement.
Owners rely on Gates v. Housing Appeals Bd. of Columbus (1967),10 Ohio St.2d 48, in which the Supreme Court of Ohio stated,
 In the absence of a determination that the continued use of improved real property without conforming to building standards subsequently adopted would constitute a nuisance, improvements necessary to comply with the new standards may not constitutionally be compelled by a public agency against the private owner of such property.
Id. at Syllabus. The facts in Gates are distinguishable from those in the present case, however. In Gates, the renovations in question were improvements to the plumbing facilities, specifically the number of toilets available to roomers in a boarding house. The evidence showed that the cost of updating the boarding house to meet the newly enacted housing code would cost the owner half the value of the building. TheGates Court found that the housing authority did not show that "failure of that property to conform * * * endangers the public health or the health of its occupants in particular. In short, neither the Code, nor the order against this particular building thereto, constitutes an attempt to eliminate a present nuisance." Id. at 49-50. The Gates Court also found that imposing the requirement of the Code would deprive the owner of his property because no buyer would purchase it with the added financial burden constituting half again its present value. The Code also imposed a fine on owner of "$9,125 per year. To this extent, the Code is implicit with confiscation as applied to the property here involved." Gates at 52.
The code in the instant case imposes no such onerous burden. However, even if the burden were comparable, this court would have no way of knowing that, because owners presented no evidence of what the retrofitting would cost in proportion to the buildings' value. Further, appellants have failed to show that the danger that the retrofitting is designed to avoid is less than a nuisance. As noted above, the burden of showing a municipal ordinance to be unconstitutional is on the party challenging that ordinance. Northern Ohio Sign at 317-318. On the other hand, the City has met its burden, as defined in Gates, of showing the danger on noncompliance.
Further, as the Supreme Court of Ohio stated in a later case, "courts will presume the constitutionality of a municipal ordinance and * * * the party challenging a legislative act of a municipality bears the burden of demonstrating its unconstitutionality." Northern Ohio Sign v. Lakewood
(1987), 32 Ohio St.3d 316, 317-18. In Northern Ohio Sign, appellants, challenging the constitutionality of an ordinance controlling the design and appearance of signs in the city, claimed that the city was trying to control aesthetics under the guise of enforcement of a police power. The Court stated, "[a] municipal ordinance passed under [police power] authority will be valid if it bears a real and substantial relationship to the health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary." Id. at 318 (citations omitted.) As that Court noted, R.C. 715.44(C) grants a municipality the authority to "[p]revent injury and annoyance from any nuisance * * *."
Owners also rely on Ghaster v. Preston (1964), 176 Ohio St. 425 and SunOil v. Upper Arlington (1977), 55 Ohio App.2d 27, to support their assertion that requiring them to retrofit their elevators would be an unconstitutional taking. Both cases differ significantly from the situation in the present case and they therefore do not support the owners' arguments.
In Ghaster, the director of highways prohibited a property owner from erecting advertising billboards on his property adjacent to the newly constructed interstate. The property owner had previously used the land for this purpose, but the highway director determined that the distraction of the billboards presented a danger to the driving public. The Court held that "[w]here a valid statute has prohibited a particular use of property or has provided that such use shall constitute a nuisance, the owner no longer has a lawful or legitimate right to so use his land." Ghaster at syllabus paragraph three. The owners of the apartment buildings which are the subject of this case are not being deprived of the use of their property. The buildings still may be used as apartments: the city is trying only to abate a nuisance by requiring a safety feature on the elevators in those buildings. Thus this case differs significantly from Ghaster.
In Sun Oil, the city of Upper Arlington passed a zoning ordinance prohibiting free-standing signs advertising a business on that business's property. The city failed to prove that the prohibited signs presented a threat to the safety and well-being of the public. The court stated that "[t]he police power, however, is based upon public necessity. There must be an essential public need for the exercise of the power in order to justify its use." Sun Oil at 29. (Citations omitted.)
In the case at bar the evidence supports the city's need to protect its elevator inspectors from harm and there is no evidence that providing that protection would cause the owners undue hardship.
The second assignment of error is without merit.
Owners' third assignment of error states
 III. THE TRIAL COURT ERRED IN FINDING THAT THE LACK OF CAR TOP INSPECTION DEVICES POSES AN UNREASONABLE RISK TO ELEVATOR INSPECTORS WHEN NO ELEVATOR INSPECTOR HAS EVER BEEN INJURED IN OVER SIXTY (60) YEARS OF THE ELEVATORS OPERATION AND INSPECTIONS.
Owners further claim that the retrofitting is not necessary for the safety of the inspectors because there is no evidence that any inspector has been injured during an inspection in their buildings since they were built. Aside from the statement of their attorney at the hearing, no evidence was provided, however, to support this statement. No one testified that he had checked records for an accident. Rather, the attorney simply stated that he was unaware of any injuries. Clearly this is not enough to support the claim that no injuries had occurred.
Even if owners' attorney is correct in stating that no inspector ever had been injured on these particular elevators, the testimony of the city chief inspector provides the support needed to show that the retrofit is necessary for safety. The inspector testified that the car top operating devices are necessary to prevent the inspector on top of the elevator from being squished if the car is called to the top floor when the inspector is on top of it. At the hearing held by the Cleveland Board of Building Standards and Building Appeals, Chief Inspector Daniel Hahn testified that with the car in its top position, the standard space between the top of the elevator and the roof is 42 inches. However, "usually with the older elevators, it's less than 42." Mr. Hahn also testified that if the elevator fails to stop before the top position when it is being tested by the inspector, you don't stop and you're going to hit the deck. And we have found many that failed, but they've all had cartop inspections [devices]." (Emphasis added.) As Mr. Hahn pointed out, "some of my inspectors are taller than 42 inches * * *." Id. at 10. The fact that elevators in the past have failed to stop, and that these elevators posed a hazard to the inspectors which was avoided only by the presence of the car top operating device, sufficiently demonstrates that these devices are needed for the safety of the inspectors.
The third assignment of error is without merit.
The judgment is affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, J., and ANNE L. KILBANE, J., CONCUR.
[1] The Ohio Administrative Code, in turn, states that [t]he rules of the Board of Building Standards adopted pursuant to Section 3781.10 of the Revised Code and known as the `Ohio Basic Building Code' shall govern any rule or standards adopted by the board pursuant to section 4105.011
of the Revised Code. OAC 4101:5-3-02
[2] OAC 3103.0 [4101:2-30-13.]
[3] Although there would appear to be a conflict between the OAC and the Ohio Basic Building Code as to whether one applies the 1993 or the 1997 versions of the safety code, the sections applicable to this case do not differ between versions.
[4] ANSI/ASME A 17.3, 1996 version, OAC 4101:5-3-01, Note (a).
[5] This Code section also states that the standards shall include the dated edition, as well as any amendments thereto, subsequently published by the same authority. OAC 4101:5-3-01(B). The 1996 version of the ASME standards would apply, therefore, to the 1999 elevator inspection in question in this case.
[6] We note that none of the parties supplied the court with copies of any portion of the Ohio Basic Building Code, as required by Appellate Rule 16(E). Nor did either party supply the court with copies of Cleveland Building Code 3111.02(a)(4).
[7] In their appellate brief, appellants claim they later discovered that the cost of retrofitting the elevators would be $44,000. They provide no proof of this statement, however. They also do not indicate what proportion of the property's value this amount would comprise.
[8] The city inspector, on the other hand, testified that the city had cited over probably 40 [noncompliant elevators] so far in the City and all have complied except for he's here today. Tr. at 15. In other words, at least 35 elevators were retrofitted to comply with the code. From their compliance we conclude that no undue hardship resulted to those owners from upgrading their units.