GRIFFITH et al., Appellants,

v.

RIELAGE et al., Appellees.

2004-Ohio-1443.]

Court of Common Pleas of Ohio,
Franklin County, Civil Division.

No. 03CVF11–12552.

Decided March 9, 2004.

———————

William L. Loveland, for appellants.

Jim Petro, Attorney General, William J. Cole and Hilary R. Damaser, Assistant Attorneys General, Executive Agencies Section, for appellees.

———————

DAVID E. CAIN, Judge.

{¶ 1} This matter is before this court on an administrative appeal brought in accordance with R.C. 119.12. The determinative facts are not in significant dispute. Appellants Leigh Ann Griffith et al. own an equestrian center or facility in Hilliard, Ohio. In connection with that operation, there exists a barn on the property that houses a number of horses for breeding, raising, boarding, and training. At an undetermined time in the past but in excess of 20 years ago, persons working at the facility were permitted by the owner to reside in apartments in the barn. After appellants purchased the facility, they invested money in improvements for the four apartments in one of the lofts over the horse stables. Currently, both horses and people, including children and a pregnant woman, reside in the structure. The current adult residents are farm workers employed by appellants.

{¶ 2} Based upon the evidence presented, there exists no automatic fire detection system or fire protection system in the barn. In other words, there is no mechanical fire alarm system and no sprinkler system in the structure. Additionally, the evidence revealed that there exists limited and unprotected means of egress from the structure. The available means of exiting the building are restricted to those leading to the interior portion of the barn, as opposed to leading directly to the outside of the barn. Further, the four second-floor apartments do not have windows on the exterior of the barn.

{¶ 3} On July 24, 2003, a certified safety inspector from the State Fire Marshal's Office inspected the premises and issued appellant citations for violations of two codified regulations, to wit, Ohio Adm.Code 1301:7–1–02(E) and 1301:7–7–06(A)(2). Specifically, the respective regulations are as follows:

"Special fire protection requirements: When the fire official finds that in his opinion adequate fire protection is not being provided in a building, structure or premises as herein required or where such fire protection is deemed

necessary due to distinct hazardous or dangerous conditions involving the occupancy of a building or structure, special fire protection equipment shall be installed in accordance with the requirements of this code and the building code."

"Unsafe means of egress: In any structure in which the means of egress are deemed inadequate for safety by the code official, additional provisions shall be made for safe means of egress as the code official shall order."

{¶ 4} Appellants appealed from these citations to the Ohio Board of Building Appeals, which conducted a hearing on October 8, 2004. Evidence was presented at the time. Additional evidence from earlier proceedings relating to this property were by agreement of the parties and permission of the board included in the record that is the subject of this review. On October 31, 2003, the board issued its decision upholding the citations and the orders of remediation. This appeal results.

{¶ 5} This appeal is taken pursuant to R.C. 119.12. In relevant part, that statute provides:

"Any party adversely affected by any order of an agency issued pursuant to any other adjudication may appeal to the court of common pleas of Franklin county, except that appeals from orders of the fire marshal issued under Chapter 3737. of the Revised Code may be to the court of common pleas of the county in which the building of the aggrieved person is located.

"* * *

"The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."

{¶ 6} In its challenge to the findings and orders below, appellants put forth a number of arguments. First, appellants assert that the doctrines of res judicata, collateral estoppel, failure to exhaust administrative remedies, law of the case, and double jeopardy prevent this court from affirming the decision below.[1] By way of background, two previous inspections of appellants' property were conducted that led to the issuance of numerous citations for conditions at appellants' barn, including the conditions giving rise to the instant citations.

---

1. Although appellants mention these various legal theories, they offer arguments or support for only a few. Those argued and supported are addressed herein.

Citations were issued for excessive use of electrical extension cords, a missing fire extinguisher, inadequate exit lighting, blocked exits, unsafe building, unauthorized change in occupancy, and lack of firewalls.

{¶ 7} Appellants undertook to remedy most of the violations for which the citations were issued. Pursuit of those particular matters was ceased by appellee. However, three matters remained unresolved and were heard by the Board of Building Appeals on July 30, 2003, and on August 28, 2003. Before the second hearing, however, appellant issued two additional citations, namely the two under consideration herein. Those citations concern the matters of a lack of fire protection and a lack of proper means of egress. Notably, however, the instant citations were issued for violations of regulations different from the regulations cited in the earlier citations.[2]

{¶ 8} Following the presentation of evidence at the two-session hearing on the first set of charged violations, submission of legal briefs, and upon consideration of the initial violations, the board issued formal decisions on September 11, 2003, concluding that it did not have jurisdiction to rule on the three matters there presented. No appeal was taken from those decisions.[3]

{¶ 9} Appellants now complain that they are being subjected to unfair governmental action inasmuch as it is claimed that appellee is pursuing matters that have been once determined. As appellants correctly point out, the doctrine of res judicata does apply in matters of administrative review. However, just as in matters of judicial review, for the doctrine to be applicable, there must first exist a final determination on the merits of the issues presented. "A valid, final judgment *rendered upon the merits* bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. * * *" (Emphasis added.) *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, syllabus. Where there has been no decision on the merits due to a lack of jurisdiction, there does not exist a decision on the merits and res judicata does not apply. See *Pravitskyy v. Halczysak*, Cuyahoga App. No. 82295, 2003-Ohio-7057, 2003 WL 23009105.

{¶ 10} In the related cases, the board did not render decisions on the merits of the charged violations but instead found that it had no jurisdiction to rule on the

---

**2.** The initial relevant citations were based on claimed violations of Ohio Bldg. Code 115.1, Ohio Adm.Code 1301:7–7–03(A)(2) and Ohio Adm.Code 1301:7–7–03(C)(1). In contrast, the citations in the case sub judice are based on alleged violations of Ohio Adm.Code 1301:7–7–02(E) and Ohio Adm.Code 1301:7–7–06(A)(2).

**3.** Perhaps through error, appellants urge that the *September 11, 2003* decision of the board must be reversed. It is clear, however, that the mentioned decision was not appealed, and consequently this court has no authority to alter the decision of the board finding that it lacked jurisdiction.

merits of the original citations issued.[4] That determinative finding cannot be used to preclude appellee from pursuing other citations it issued concerning the same property. Similarly, the observations of the members of the board are without precedential value. They determined that they had no power over the matters presented so anything they may have stated was implicitly acknowledged by them to be without legal force or authority.[5] Appellant's arguments to the contrary are found not to be persuasive.[6]

{¶ 11} Similarly, appellants' arguments concerning the theoretical imposition of criminal double jeopardy must fail. As appellee correctly points out, appellants have not been "acquitted" or "convicted" of the civil code violations initially issued against their property, nor has there been any attempt at criminal punishment for past conduct. The prohibitions of double jeopardy require (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *United States v. Halper* (1989), 490 U.S. 435, 440, 109 S.Ct. 1892, 104 L.Ed.2d 487, citing *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656.

{¶ 12} In the instant case, appellants were initially given citations that they appealed to a tribunal, which found that it did not have jurisdiction over the matters appealed to it. No acquittal was made, no conviction was entered, and no punishments were suffered. The protections afforded by constitutional double jeopardy provisions are thus found not to be applicable here.

{¶ 13} Appellants next argue that in finding the violations it did, the board failed to apply a nuisance standard for liability. In this connection, appellants rely on the decision in *Abdalla's Tavern v. Ohio Dept. of Commerce, Div. of State Fire Marshal,* Jefferson App. No. 02 JE 34, 2003-Ohio-3295, 2003 WL 21454696. In *Abdalla's Tavern,* the State Fire Marshal issued citations to Abdalla's Tavern for alleged code violations relating to the operation of its kitchen. The kitchen in

---

**4.** Appellants readily acknowledge that the board did not make findings of fact or describe conclusions of law.

**5.** While this court may not agree with the board's findings in the two previous cases that it had "no jurisdiction regarding [these] matter[s]," those decisions were not appealed and are not before this court for resolution or further review.

**6.** The lack of congruity in appellants' argument is recognized upon a consideration that appellants acknowledge, on one hand, that the board found that it did not have jurisdiction over what was before it but, on the other hand, appellants urge that "it is absolutely clear" that the board "found appellants to be exempt from [the building code]." It is elementary, however, that when a tribunal determines that it lacks jurisdiction over a matter, it has no power to make findings concerning the matter.

question had been in operation from a time preceding the existence of the fire code regulations sought to be imposed at the time of an inspection in 2001.

{¶ 14} New code standards may not be applied to existing structures and conditions, except in cases where the Fire Marshal finds a "distinct hazard to life or property" (Ohio Adm.Code 1301:7–1–02[A] ), or where there is a "serious safety or sanitation hazard" (Ohio Adm.Code 4101:1–1–02). Appellants seek to restrict the application of newly enacted fire codes only to those instances of "distinct hazard" or "serious safety * * * hazard," which are also found to be nuisances. The concept of nuisance is very expansive in Ohio and unquestionably applies to an edifice that is unreasonably unsafe and unfit for inhabitation by members of the public, most notably children.

{¶ 15} "If danger there was, then also there was nuisance, though nuisance growing out of negligence. Nuisance as a concept of the law has more meanings than one." Judge Cardozo in *McFarlane v. Niagara Falls* (1928), 247 N.Y. 340, 160 N.E. 391. The law of nuisance is an especially vague area of tort law, having been described as the most "impenetrable jungle in the entire law." *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 712, 622 N.E.2d 1153, quoting Prosser & Keeton, The Law of Torts (5th Ed.1984) 616, Section 86.

{¶ 16} Appellant argues that under *Abdalla's Tavern*, a finding of a nuisance is required as a predicate for a finding that a "distinct hazard" exists. The issue of what constitutes a nuisance in similar settings has met with judicial recognition in a number of cases. A cogent review is found in *DeLorean Cadillac, Inc. v. Lakewood* (Apr. 10, 1986), Cuyahoga App. Nos. 50096, 50097, and 50105, 1986 WL 4388, wherein it is stated:

"Government · can impose new requirements for using property or prohibit previously lawful usage if its continued unchanged use constitutes a nuisance. See *Ghaster Properties,* [*Inc. v. Preston* (1964), 176 Ohio St. 425, 27 O.O.2d 388, 200 N.E.2d 328], supra, paragraphs two through four of the syllabus. Such legislation does not take property in the constitutional sense if it lawfully exercises the state's police power to abate nuisances. *Ghaster Properties,* supra, at 432–433 [27 O.O.2d 388, 200 N.E.2d 328] (quoting *Curtiss v. Cleveland* [1959], 170 Ohio St. 127 [10 O.O.2d 85, 163 N.E.2d 682], paragraph one of the syllabus). The legislation lawfully exercises police power when it bears a real and substantial relation to the public health, safety, morals or general welfare and is not unreasonable or arbitrary. Id.

"By contrast, the government cannot impose new requirements for existing property when its continued unchanged use does not constitute a nuisance. *Gates Co. v. Housing Appeals Bd.* (1967), 10 Ohio St.2d 48 [39 O.O.2d 42, 225 N.E.2d 222], syllabus; *Akron v. Chapman* (1953), 160 Ohio St. 382 [52 O.O. 242, 116 N.E.2d 697], paragraph two of the syllabus. Thus, a city cannot prohibit

previously lawful signs if their continued presence does not create a nuisance. *Sun Oil Co. v. Upper Arlington* (1977), 55 Ohio App.2d 27 [9 O.O.3d 196, 379 N.E.2d 266]; *Aristo–Craft, Inc. v. Evendale* (1974), 69 Ohio Op.2d 118 [322 N.E.2d 309].

"The property's continued unchanged use does not constitute a nuisance if it does not endanger the health, safety, or welfare of the public *or its occupants. Gates Co.,* supra, at 52 [225 N.E.2d 222]. However, the property's continued unchanged use creates a nuisance subject to the lawful exercise of police power if it poses a real and substantial danger to health, safety, or welfare. Cf. *Ghaster Properties, Inc. v. Preston,* supra, at 429–431 [27 O.O.2d 388, 200 N.E.2d 328]." (Emphasis added.)

{¶ 17} The notion that members of the public are involved in these cases is a recurrent one. For example, in *Gates Co. v. Housing Appeals Bd.* (1967), 10 Ohio St.2d 48, 39 O.O.2d 42, 225 N.E.2d 222, the Ohio Supreme Court in a case involving the issue of whether a building owner had to upgrade toilet facilities, pointedly observed that no claim was made (by the city) that the then existing bathroom facilities "endangere[d] the public health or the health of its occupants in particular." In the case at bar, however, the record contains ample evidence that the occupants of appellants' barn are placed at unreasonable risk due to the lack of fire warning devices and the lack of adequate means of emergency egress.

{¶ 18} In a case decided long ago, the Ohio Supreme Court observed to be a nuisance a building constructed without fire escapes on the upper floors. In *Cincinnati v. Steinkamp* (1896), 54 Ohio St. 284, 43 N.E. 490, Justice Spear said of the building lacking the upper-floor fire escapes: "A building of the character described not provided with suitable exits, is, speaking in a general sense, a nuisance. * * *"

{¶ 19} In *Wilson v. Saalfield* (1933), 45 Ohio App. 484, 187 N.E. 323, the court noted that a building used to house residents could be considered a common-law nuisance if it failed to have proper means of egress from fire. The court observed:

"The mere construction of the building without fire escape facilities would not create a nuisance; only use of the building as a hotel without fire escape facilities would create a nuisance; and, if that would constitute a nuisance in the absence of statutory requirements, the landlord's liability at common law would arise from his renting the building for hotel purposes when its use for that purpose without fire escape facilities would necessarily result in a nuisance."

{¶ 20} Where, as here, a situation is extant with tenants (as distinguished from owners) living and sleeping in an upper floor of an edifice that is combustible by construction, that houses combustible materials by design, and that provides for

the rapid uncontrolled spread of fire, a situation of clearly recognizable danger is presented. This situation, compounded by the lack of appropriately located hazard warning· devices and a grossly inadequate means of emergency escape results in an undeniably unreasonable hazard to those residing in the structure.

{¶ 21} Upon consideration, this court finds that the record fully supportive of a finding that the structure in question constituted a nuisance. This court finds that the evidence presented preponderates to support the conclusion that the condition of the structure is such that it presents a particular and unreasonable hazard to members of the public, thus permitting appellee to exercise the police powers delegated to it.

■ {¶ 22} Accordingly, this court finds that the standard to be applied by the administrative agency when applying current code regulations to previously existing structures is first a practical one involving the test to comport with constitutional considerations of whether the alleged condition of appellants' premises is unreasonably hazardous to members of the public. Second, the administrative agency must then look to the regulations to determine whether the condition presents a "distinct hazard to life or property" or a "serious safety or sanitation hazard."

{¶ 23} In the instant case, the evidence on the controlling issues propounds in favor of appellee. Appellee's fire safety inspector Johnson testified concerning the "very combustible" conditions extant in appellants' barn. He related the existence of wood, drying conditions, wind, and other factors as causing a notably dangerous condition. He noted that these conditions in addition to the absence of smoke detectors in the barn area and the absence of a sprinkler system. Additionally, he testified about the unprotected and open means of egress (all of which lead to the interior of the barn).

{¶ 24} Appellee's staff engineer McCann testified that although he had not been to the property, he offered his expert opinions that based upon his review of the information made know to him, several code violations existed with respect to the absence of a protected means of egress and the absence of necessary fire-protection equipment. He opined that based upon his experience and noting the combustible construction of the barn, coupled with the "fire load" from straw and the like, a fire that could occur would develop "extremely fast." He further opined that the conditions described constituted, in his opinion, a "distinct hazard."

{¶ 25} Upon a full review of the record, this court finds that the evidence before the board was notably favorable to appellee's contention that appellants were in violation of Ohio Adm.Code 1301:7-1-02(E) and 1301:7-7-06(A)(2). More particularly, this court finds that the record supports the conclusion that a

distinct hazard clearly existed in this case where there are members of the public, including young children, residing in a structure that is highly combustible and without properly placed first-floor hazard-warning devices or fire-suppressant devices, and which fails to have a means of egress to permit residents to effectively escape a fire when one occurs in the barn.[7] The record also supports a finding that this condition is not only a distinct, articulable hazard, but it is also one that is an unreasonable hazard impacting on members of the public (including children who have not voluntarily chosen to live there under those conditions).

{¶ 26} Next, appellants contend that the regulations sought to be enforced are unconstitutionally vague. They maintain that the regulations appellants were charged with violating are not constitutionally sound because they rely on determinations of opinion and circumstances that are not guided in a manner so that a reasonable citizen can conform to the law. In support of this proposition, appellants cite *Abdalla's Tavern,* supra.

{¶ 27} The argument of an ordinance being void for vagueness was made in an analogous setting in *Oakwood v. Carlson* (Jan. 11, 1979), Cuyahoga App. Nos. 39329, 39330, 39331, 39332, and 39363. There, the court considered the ordinance that provided that the owner of business premises was required to keep his "parking lots, and means of ingress and egress, in repair, and free and clear from all snow or ice, or any nuisance." The court commented:

"Appellee also maintains that the ordinance is 'void for vagueness and lacks legislative standards, because it delegates authority to an unknown and unqualified group of individuals who may determine a violation in their arbitrary discretion.' * * * The police and fire department officials authorized to issue citations must exercise the kind of judgment that they use whenever they determine that an ordinance has been violated. A reasonable interpretation of the ordinance requires that there must be a hazard to public health and safety before the issuance of a citation is in order, i.e., that there is sufficient snow and ice on the ground to constitute a danger and an impediment to locomotion and parking."

{¶ 28} Thus, "[t]o be enforceable, legislation need not be drafted with scientific precision." *State v. Anderson* (1991), 57 Ohio St.3d 168, at 174, 566 N.E.2d 1224. Indeed, " 'few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government

---

7. Appellants argue that this barn has not yet had a fire and that it is unlikely that a fire will occur. Such an analysis ignores the law's intent to reasonably avoid catastrophe by preventing or minimizing the current risk of danger even if it may be small. Where the potential consequences involved are minor, protection may not be warranted. Where, however, the realistically predicable consequences involve multiple deaths, then action is warranted.

inevitably limit the specificity with which legislators can spell out prohibitions.' " Id., quoting *Boyce Motor Lines, Inc. v. United States* (1952), 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367.

{¶ 29} Moreover, it should be noted that what is at issue here is an administrative regulation that is applied in a civil proceeding, not a criminal statute applied in a criminal proceeding. If the wording of the regulation is general in nature, the needed specificity commanded constitutionally in a criminal statute is not required. *Salem v. Ohio Liquor Control Comm.* (1973), 34 Ohio St.2d 244, 63 O.O.2d 387, 298 N.E.2d 138, citing *Dandridge v. Williams* (1970), 397 U.S. 471, 484–485, 90 S.Ct. 1153, 25 L.Ed.2d 491; *Hodges v. Fitle* (D.Neb. 1971), 332 F.Supp. 504, 510.

{¶ 30} Perhaps most important in this consideration is an examination of the statutory framework for imposing a sanction on one who allegedly violates a fire code regulation. R.C. 3737.42 provides that if the inspecting fire official believes that a violation exists, he shall issue a citation referring specifically to the nature of the violation and "fix a reasonable time for abatement of the violation." Under R.C. 3737.42, the next step in the process is to notify the responsible party of the "proposed" penalty and provide that party with notification of his right to appeal.

{¶ 31} Appellants' void-for-vagueness argument lacks the force of persuasiveness, considering that they were notified of the specific violations and given specific information of how to abate the violation or condition before a penal sanction would be imposed. Indeed, the order from which this appeal is taken delays the imposition of any penal sanction until 60 days thereafter so as to enable appellants sufficient time to bring their property into compliance with the fire code. Thus, for these reasons, appellants' claim that the regulations sought to be enforced are unconstitutionally vague must fail.

{¶ 32} Appellants also argue that the Fire Marshal "lacked jurisdiction" over the subject property and the conditions on the property by virtue of R.C. 3781.061. Other than observing that the mentioned statute is applicable in this case because the county zoning inspector issued a zoning certificate that declared that appellants' barn was used in agriculture, appellants fail to explain how that circumstance deprived the Fire Marshal of "jurisdiction" over the property.

{¶ 33} The Fire Marshal's "jurisdiction" is granted by R.C. 3737.22. That section provides that "[t]he fire marshal shall * * * [e]nforce the state fire code." The State Fire Code is all-encompassing in its application. It applies to safeguard life, property, and public welfare from the hazards of fire throughout the state. Further, R.C. 3737.22(D) provides:

"The fire marshal, the chief deputy fire marshal, the chief of the bureau of code enforcement, or any assistant fire marshal under the direction of the fire

marshal, the chief deputy fire marshal, or the chief of the bureau of code enforcement may cause to be conducted the inspection of *all buildings, structures, and other places,* the condition of which may be dangerous from a fire safety standpoint to life or property, or to property adjacent to the buildings, structures, or other places." (Emphasis added.)

{¶ 34} Thus, upon consideration, appellants' assertion that the Fire Marshal lacked jurisdiction is without merit inasmuch as his offices clearly had that authority to inspect appellants' barn (R.C. 3737.22) and the power to issue citations for violations of the fire code (R.C. 3737.42).

{¶ 35} Finally, appellants question the probative value of the evidence submitted in the record in this case. They urge that the record in this case "has to be found to be one of the weakest and unpersuasive packages of 'evidence' and conjecture presented." The court has reviewed the record and does not concur with appellants' assessment of the contents of the record. The testimony from two expert witnesses, Johnson and McCann, was that the condition of the premises was notably dangerous and, according to McCann, a "distinct hazard." The fact that McCann never visited the property is of minimal import in this case because his opinions were clearly based on information made know to him and admitted as evidence. There was nothing of a substantive nature that would cause the members of the board to disbelieve the evidence of violations of the State Fire Code.

{¶ 36} Therefore, upon full consideration, this court finds the board's October 31, 2003 order to be supported by the preponderance of reliable, substantial, and probative evidence. It is not, however, in all respects in full accordance with law. Most notably, the order requiring compliance dictates that appellants take remediation measures in accordance with the Ohio Building Code. As appellants correctly point out, however, the Franklin County Zoning Inspector certified that appellants' barn was used in agriculture. Thus, the provisions of R.C. 3781.061 become operative. That section provides:

"Whenever a county zoning inspector under section 303.16 of the Revised Code, or a township zoning inspector under section 519.16 of the Revised Code, issues a zoning certificate that declares a specific building or structure is to be used in agriculture, such building is not subject to sections 3781.06 to 3781.20 or 3791.04 of the Revised Code."

{¶ 37} Considering that the board's remediation or abatement order includes overt and specific adherence to the Ohio Basic Building Code, it is overly broad inasmuch as appellants' property is not subject to regulation promulgated under the authority of the statutes referenced immediately above. Accordingly, the board's October 31, 2003 order and the remediation order incorporated therein are *modified* to the extent that appellants cannot be compelled to adhere to R.C.

3781.06 to 3781.20 or 3791.04 and regulations promulgated under R.C. 3781.06 to 3781.20 or 3791.04. Regulations having as their genesis other Revised Code sections may, however, be the source of regulatory effect. Similarly, appellee may use any other of its statutory granted authority to effect hazard abatement herein.

{¶ 38} Appellee's order of October 31, 2003, is hereby *affirmed with modification* and this matter is hereby *remanded* for further proceedings consistent with this decision. Additionally, and upon reconsideration, this court's enforcement stay order entered herein on January 9, 2004, is hereby *vacated.*

Judgment accordingly.