The STATE of Ohio, Appellant,

v.

FINNELL, Appellee.

[Cite as *State v. Finnell* (1996), 115 Ohio App.3d 583.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–960362 and C–960363.

Decided Nov. 13, 1996.

*Fay Dupuis*, City Solicitor, and *Jennifer Bishop*, for appellant.

*Ritter & Randolph* and *Mark D. Hemmerle*, for appellee.

PAINTER, Judge.

## I. Facts [1]

Defendant-appellee William Finnell owns two vacant buildings in Cincinnati, one on Mulberry Street and one on Rice Street. The Cincinnati Building and Inspections Department ("CBID") ordered Finnell to obtain a vacant-building-maintenance license ("VBML") and to barricade the building on Mulberry Street pursuant to Cincinnati Municipal Code ("C.M.C.") 1101–61 and 1101.62. Finnell failed to comply with the CBID orders and was charged with violations of C.M.C. 1101.54 for failure to comply with the lawful orders of the CBID.[2]

Finnell filed a motion to dismiss the charges. Section 1101.62.1 requires that the owner of property applying for a VBML shall arrange for inspection of the property by the CBID. The trial court held that this section of the C.M.C. violated the Fourth Amendment to the United States Constitution by requiring property owners to submit to warrantless inspections of buildings, and therefore that Finnell did not violate a lawful order of the CBID. Upon that basis, the trial court granted Finnell's motion to dismiss the charges. The state appealed the judgment in both cases, arguing in a single assignment of error that the trial court erred in granting the motion to dismiss because "mere ownership" of a vacant building was not sufficient to establish a reasonable expectation of privacy when Finnell neither lived, conducted any business, nor performed any activities in the vacant buildings.

---

1. We *sua sponte* remove this case from the accelerated calendar.

2. We note that the two cases involved in this appeal are only two of five cases against Finnell that were dismissed by the trial court's order. The state has apparently chosen not to appeal the three other dismissals.

## II. Procedure for Obtaining VBML

Owners of buildings declared "vacant" by the director of CBID are required to obtain a VBML. C.M.C. 1101.61.1. Owners of buildings that are required to get a VBML have either the amount of time specified on the order from CBID or, if no time is specified, thirty days to get the VBML. C.M.C. 1101.61.2. Owners who fail to obtain a VBML within the designated time period, or who fail to comply with the terms of the obtained VBML, are subject to prosecution under C.M.C. 1101.54.1.[3] C.M.C. 1101.61.3.

The procedure for applying for a VBML is found in C.M.C. 1101.62.1, which states:

"1101.62.1. Application: Application for a vacant building maintenance license shall be made on a form provided by the director of buildings and inspections and verified by the owner. The application shall disclose all measures to be taken to ensure that the building will be kept weathertight and secure from trespassers, safe for entry by police officers and fire fighters in times of emergency, and, together with its premises, free from nuisance and in good order. At the time of application, the owner shall arrange for inspection of the premises by the director in the presence of the owner or an agent of the owner having responsibility for maintenance of the premises."

Thus, an owner of a building that has been declared "vacant" by CBID must arrange for inspection of the premises by CBID, and if that owner fails to obtain a VBML, he will be subject to prosecution.

■ As the trial judge astutely pointed out, the Supreme Court of Ohio has held that the imposition of a criminal penalty upon an owner's failure to comply with regulations that require a warrantless inspection of that owner's property violates that owner's rights under the Fourth Amendment to the United States Constitution. *Wilson v. Cincinnati* (1976), 46 Ohio St.2d 138, 75 O.O.2d 190, 346 N.E.2d 666.

■ The United States Supreme Court has stated: "What the Fourth Amendment protects is the security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home or his office, his hotel room or his automobile." *Hoffa v. United States* (1966), 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374. The well-established test for whether a violation of a property owner's Fourth Amendment rights has occurred is whether there was a violation of that owner's reasonable expectation. See, *e.g., Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; *Rakas v. Illinois* (1978), 439

---

3. C.M.C. 1101.54.1 makes the failure or refusal of a party to comply with the *lawful* order from the director of CBID a first-degree misdemeanor.

U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387. In *Wilson,* the property in question was housing, and the fact that the owners in that case held a reasonable expectation of privacy was beyond cavil. See, also, *Camara v. Mun. Court* (1967), 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930.

Thus, under *Wilson, Camara,* and numerous Fourth Amendment cases, the C.M.C. 1101.62.1 requirement that Finnell submit to a CBID inspection or face prosecution under C.M.C. 1101.61.3 and 1101.54.1 is unconstitutional if Finnell held a reasonable expectation of privacy in his "vacant" building.

### III.   Expectation of Privacy

The city argues in its sole assignment of error that the trial court erred because it found that "mere ownership" of a vacant building was sufficient to establish that Finnell held a reasonable expectation of privacy. The party alleging that his Fourth Amendment rights were violated, in this case, Finnell, bears the burden of persuasion that (1) the party exhibit an actual subjective expectation of privacy, and (2) the expectation is recognized objectively by society as reasonable. *Katz, supra; Rakas, supra.* The extent to which an expectation of privacy may be deemed "reasonable" turns on a location's connection to concepts of intimacy, personal autonomy, and privacy. *Dow Chem. Co. v. United States* (1986), 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226.

The city argues that no reasonable expectation of privacy exists in a location without the occurrence of intimate and personal activities traditionally associated with the home. While such activities clearly indicate a reasonable expectation of privacy, this is not the appropriate test.

The United States First Circuit Court of Appeals listed factors that provide indicia of whether a party demonstrates a reasonable expectation of privacy: (1) ownership, (2) possession and/or control, (3) historical use of the property, (4) ability to regulate access, (5) subjective anticipation of privacy, (6) objective reasonableness of that anticipation, and (7) the totality of the circumstances. *United States v. Gomez* (C.A.1, 1985), 770 F.2d 251, 254. The determination of whether a party has exhibited a reasonable expectation of privacy requires a detached evaluation of the facts and circumstances of the particular case. *United States v. Brock* (C.A.9, 1982), 667 F.2d 1311.

Here, the city admits that Finnell is the owner and maintains both possession and control of the building. The historical use of the property is unclear from the record; however, the city categorizes it as residential. We cannot glean from the record the length of time that the building has been vacant, what caused it to be vacant, any plans to renovate or demolish the building, or any current uses for the building. Finnell regulates access to the

building and, in fact, met the city inspector at the site and refused to grant the inspector access. Finnell certainly has a subjective anticipation of privacy—he prevents access to noninvitees. From these facts in evidence, we agree that Finnell had a subjective expectation of privacy.

The objective reasonableness of that expectation must be taken in conjunction with the facts and circumstances of the case. *Dow Chemical Co., supra.* Clearly, Finnell's privacy interest in his vacant buildings is lower than that of home owners in their homes, or business owners in their business premises. However, the buildings are not abandoned, and we cannot discern what lies within the buildings, due to the care taken by Finnell to exclude trespassers. If Finnell used the buildings for storage, the city admits that his interest would be greater than if the buildings were completely empty. Therefore, Finnell maintains an expectation of privacy that is reasonable—albeit an expectation that is protected to a lesser extent than such expectations where the owner is active and the site is in productive use. We must also then determine whether that "lesser" reasonable expectation is protected under the facts and circumstances of this case.

The circumstances that determine the reasonableness of Finnell's expectation of privacy in this case are intertwined with the purpose of the ordinance, and thus it is important to determine whether the city has a compelling interest and whether that interest is burdened to such an extent by the requirement that the city obtain an administrative warrant that Finnell's expectation of privacy is no longer protected.

### IV. Administrative Warrant Requirement

Administrative entry by the government into premises may only be compelled within the framework of a formal warrant procedure. *See v. Seattle* (1967), 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943. Probable cause to issue an administrative warrant for entry into premises is the subject of a flexible standard of reasonableness given the agency's particular demand for access and the public need for effective enforcement of the regulation involved. *Id.* However, the United States Supreme Court declared: "But the decision to enter and inspect will not be the product of the unreviewed discretion of the enforcement officer." *Id.* Thus, a warrant may be issued to permit authorities to enter commercial premises as long as the public need for effective enforcement of the regulation involved outweighs an owner's expectation of privacy, because under those circumstances, the expectation is no longer "reasonable."

In the case at bar, the ordinances invoke no warrant procedure. The threat of prosecution unless an owner submits to an inspection is not a permissi-

ble method to gain entry into commercial premises under *See.* If Finnell has some reasonable expectation of privacy, the procedure set up in the ordinance is impermissible under the Fourth Amendment analysis in *See,* because no warrant procedure is used. While a constitutionally permissible procedure could be established whereby warrants may be obtained upon proof that the public need for the inspection to preserve the health, safety, and welfare outweighs the owner's expectation of privacy on a case-by-case basis, such a procedure is not under review.

The United States Supreme Court carved out an exception to its holding in *See* and held that an owner's expectation of privacy is "attenuated" in a "closely regulated" industry. *New York v. Burger* (1987), 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601. "Where the owner's privacy interests are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises, if it meets certain criteria, is reasonable within the meaning of the Fourth Amendment." *Burger, supra.* Justice Blackmun listed three criteria that must be met for the *Burger* exception to apply. First, a "substantial" government interest must be demonstrated that informs the regulatory scheme pursuant to which the inspection is made. See, also, *Donovan v. Dewey* (1981), 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262. Second, the inspections without warrants must be necessary to further the regulatory scheme. See, also, *Donovan, supra.* Justice Blackmun cited *Donovan* to illustrate that the requirement to obtain a warrant before inspection might alert mine owners of an impending inspection and the lack of surprise might frustrate the purpose of the regulation. Third, the inspection program must provide a constitutionally adequate substitute for the warrant by advising the owner of the commercial premises that the inspection is being made pursuant to a specific law, that the law has a properly defined scope, and that the law limits the discretion of the inspecting officers. See, also, *Marshall v. Barlow's Inc.* (1978), 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305.

Here, the record fails to establish vacant-building ownership as a closely regulated business that requires warrantless inspections. Furthermore, the record fails to establish any of the three criteria required in order to permit the inspection without a warrant. We are mindful that there are certainly health, safety, and welfare concerns with vacant buildings. Owners under the current scheme are required to submit to a warrantless search with no way of knowing the full limits of the inspector's power to search, what authorization inspectors have, or what criteria inspectors use to determine which building owners must obtain a VBML. Currently, inspectors in the field enjoy unfettered discretion in

the enforcement of ordinances that are extremely general in nature. We simply fail to see how the important health, safety, and welfare concerns of the city require warrantless inspections for effective enforcement.

In sum, we conclude, as did the trial court, that Finnell had a reasonable expectation of privacy. While we agree that there is a health, safety, and welfare concern with vacant buildings, we hold that the city must obtain an administrative warrant before compelling involuntary inspections on vacant buildings. In most cases, the burden of obtaining such a warrant is minimal, yet the requirement protects the rights of property owners to be secure against unreasonable searches.

## V. Conclusion

The trial court held that the ordinance was unconstitutional as applied to Finnell. However, we have established that owners of vacant buildings that meet the indicia outlined in *Gomez, supra,* establish enough of an objectively reasonable expectation of privacy as to invoke the Fourth Amendment analysis. The current scheme that coerces owners into consent is not a permissible exception to the warrant requirement. *Wilson, supra; Camara, supra.*

Therefore, we affirm the judgment of the trial court, with the modification that the C.M.C. 1101.62.1 requirement that Finnell submit to a CBID inspection or face prosecution under C.M.C. 1101.61.3 and 1101.54.1 is *facially* unconstitutional, rather than only as applied to Finnell.

*Judgment accordingly.*

HILDEBRANDT, P.J., and SUNDERMANN, J., concur.