[Cite as *State v. Wallen*, 2010-Ohio-480.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

 PLAINTIFF-APPELLEE,     CASE NO.  9-09-22

 v.

CYNTHIA WALLEN,      O P I N I O N

 DEFENDANT-APPELLANT.

Appeal from Marion County Municipal Court
Trial Court No. CRB 08 00972

**Judgment Affirmed**

**Date of Decision: February 16, 2010**

APPEARANCES:

 *Kevin P. Collins*  for Appellant

 *Steven E. Chaffin*  for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Cynthia Wallen (hereinafter "Wallen"), appeals the judgment of the Marion County Municipal Court, Criminal Division, finding her guilty on nine (9) counts of failure to require her dogs to wear tags. We affirm.

{¶2} In April 2008, Deputy Amie Adams[1] of the Marion County Dog Warden's Office cited Wallen for nine counts of failure to require her dogs to wear tags in violation of R.C. 955.10 and 955.99(B), minor misdemeanors. The citations were issued following an incident during which nineteen dogs, including Wallen's nine Pomeranian dogs, were discovered in a house trailer owned by James Handley and located behind his residence at 4925 Centerville-Green Camp Road, Prospect, Ohio (hereinafter "the property"). The other dogs found in the house trailer belonged to Sonja and Carrie Kalb. The dogs were located following an anonymous complaint that the dogs had no food and water and were not tagged. Thereafter, Wallen entered a plea of not guilty to all counts.

{¶3} In May 2008, Wallen filed a motion to suppress evidence seized as a result of the search conducted at the house trailer on the basis that the search and seizure was unlawful because the search warrant was supported by an affidavit

---

[1] We note that multiple spellings of Deputy Adams' first name appear throughout the record. For consistency, we elect to use the spelling provided by Deputy Adams' signature on the citations in the record.

containing third-party hearsay allegations, and because the Marion County Humane Society agents were not law enforcement officers capable of obtaining a search warrant.

{¶4} In January 2009, the trial court held a suppression hearing, at which the following testimony was heard. Sonja Kalb testified that she had groomed Wallen's dogs since 2004; that Wallen's dogs were valuable show dogs; that, in 2006, Wallen moved from Marion County to Shelby County; that she and Wallen had a system whereby she would take some of Wallen's dogs from Shelby to Marion and would groom them as she had time; that, while the dogs were in Marion, she would store them in Handley's house trailer; that, on the day in question, nineteen dogs were stored in the house trailer, including nine of Wallen's dogs, five of her own dogs, and four of her daughter's, Carrie Kalb, dogs; that she believed Handley lived alone at the residence on the property containing the house trailer; that the property was rural and "very exclusive," and she never feared that anyone would open the door to the house trailer and allow the dogs to run free (Apr. 29, 2009 Tr. at 13); and, that she went to the property approximately two to five times per week. On cross-examination, Kalb testified that she could not be sure if anyone else entered the house trailer or went onto the property because she was not there all of the time, and that she did not exclusively control the house

trailer.

{¶5} Handley testified that he owned the residence and the house trailer on the property; that, on March 14, 2008, he housed nineteen Pomeranian dogs in the house trailer; that he was storing the dogs for Sonja Kalb, Carrie Kalb, and Wallen; that he was not compensated monetarily for storing the dogs, but that it was more of a "friendly business-type relationship" (Id. at 37); that the house trailer contained seven windows and was located in a fairly private area; that he lived alone at the residence; that he did not have many visitors to the property and it was quiet; that he never locked the door to the house trailer; that he had no reason to believe that the dog warden or humane society agents would come out to his property; that he and Sonja Kalb both fed and watered the dogs while the dogs were in the house trailer; that Sonja Kalb had free reign to come and feed and water the dogs; that Wallen had never been out to the house trailer to visit the dogs or feed and water them; that his son-in-law had been in the house trailer several times to pet the dogs because they were barking; that his granddaughter liked to go into the house trailer to play with the dogs; and, that he had let the dogs out of the house trailer and into a "run area." (Id. at 35).

{¶6} Thereafter, the trial court overruled Wallen's motion on the basis that she did not have standing to object to the search of Handley's house trailer,

and on the basis that the humane society agents were law enforcement officers with authority to obtain search warrants.

{¶7} In April 2009, Wallen's case proceeded to bench trial. Prior to testimony, Wallen's counsel proffered several exhibits for appellate purposes, including the trial court's February 2009 ruling which granted James Handley's motion to suppress the evidence seized during the same incident. Thereafter, the following testimony was heard. Deputy Tom Price of the Marion County Dog Warden's Office testified that, on March 14, 2008, the office received a complaint about nineteen dogs being located at the property; that he checked on the computer and observed that there were no tags registered to that address; that he went to the property to investigate and could hear dogs "out back" barking (Apr. 23, 2009 Tr. at 19); that no one answered the door to the home, so he went back behind the home and observed dogs through the window in a trailer; that he called the humane agent about the situation; and, that Wallen eventually claimed the dogs and picked them up from the pound, but that he had no way of knowing whether she owned the dogs.

{¶8} Deputy Amie Adams of the Marion County Dog Warden's Office testified that, on March 14, 2008, she was called to assist in transporting some dogs located in the house trailer at the property; that Wallen came into the dog warden's office in mid-April to claim her dogs and brought papers from the

American Kennel Club ("AKC"), which identified the dogs; that she used a microchip scanner to scan the dogs and the microchip numbers matched the numbers listed on the AKC papers; that the AKC papers identified the dogs' owner as Wallen; and, that she was present at the house trailer when the dogs were initially removed, while the dogs were being stored at the Warden's office, and when Wallen picked the dogs up, and they were not wearing tags at any time.

{¶9} On cross-examination, Deputy Adams testified that she had no contact with Wallen at the property when the dogs were removed from the house trailer; that she also handled five dogs belonging to Sonja Kalb at the property; that the microchip scanner did not print the results of the scans; and, that she and her boss, Jane Watts, filled out the citations together as she verified the microchip numbers with the microchip scanner company on the telephone.

{¶10} Jane Watts, the Marion County Dog Warden, testified that, on March 14, 2008, some of the dogs seized from the house trailer were housed at the Marion County Dog Warden's Office; that she and Deputy Adams filled out the resulting citations for the nine dogs belonging to Wallen; that she completed the information on the citations using the scanned microchip number, physical examinations of the dogs, and the AKC certificates; that she and Deputy Adams double-checked their work; that she was satisfied that the dogs described in the citations were accurately identified and belonged to Wallen; that all of the AKC

certificates identified Wallen as the breeder or owner; that she was present at the pound when Wallen came and picked up the dogs; and, that Wallen signed a complaint for each of the nine dogs she retrieved.

{¶11} After Warden Watts' testimony concluded, the State rested. Wallen did not make a Crim.R. 29 motion for acquittal based on the sufficiency of the evidence and presented no evidence.

{¶12} Thereafter, the trial court found Wallen guilty of nine counts of failure to require her dogs to wear tags and ordered her to pay a fine of $15 per offense, plus court costs.

{¶13} Wallen now appeals, presenting two assignments of error for our review.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY DENYING HER MOTION TO SUPPRESS.**

{¶14} In her first assignment of error, Wallen contends that the trial court erred when it denied her motion to suppress. Specifically, Wallen argues that, in Handley's case, the trial court granted the motion to suppress on the basis that the search of the trailer was unconstitutional; that she too had a reasonable expectation of privacy with respect to her dogs in the trailer; and, that because the search was

unlawful with respect to Handley, it should also be unlawful with respect to her. We disagree.

**{¶15}** "Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact." *State v. Dudli*, 3d Dist. No. 3-05-13, 2006-Ohio-601, ¶12, citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson* (2000), 137 Ohio App.3d 847, 850, 739 N.E.2d 1249. Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶100, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. The appellate court must then review the application of the law to the facts de novo. *Roberts*, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8.

**{¶16}** The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. Neither the Fourth Amendment nor Section 14, Article I explicitly requires that violations of its provisions against unlawful searches and seizures be remedied by suppression of evidence obtained as a result of such violation, but the

United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment. *Mapp v. Ohio* (1961), 367 U.S. 643, 649, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

{¶17} However, in order to invoke the exclusionary rule, a defendant "must have a reasonable expectation of privacy in the evidence seized for standing to challenge the search or seizure." *Marion v. Brewer*, 3d Dist. No. 9-08-12, 2008-Ohio-5401, ¶7, citing *State v. Jackson*, 102 Ohio St.3d 3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶8, citing *Alderman v. United States* (1969), 394 U.S. 165, 171-172, 89 S.Ct. 961, 22 L.Ed.2d 176. The defendant bears the burden of demonstrating that she possessed a reasonable expectation of privacy in the area searched. Id., citing *State v. Dennis*, 79 Ohio St.3d 421, 426, 1997-Ohio-372, 683 N.E.2d 1096, citing *Rawlings v. Kentucky* (1980), 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633. The United States First Circuit Court of Appeals has enumerated the following factors as indicia of whether a party possesses a reasonable expectation of privacy: "(1) ownership, (2) possession and/or control, (3) historical use of the property, (4) ability to regulate access, (5) subjective anticipation of privacy, (6) objective reasonableness of that anticipation, and (7) the totality of the circumstances." *State v. Finnell* (1996), 115 Ohio App.3d 583, 588, 685 N.E.2d 1267, citing *United States v. Gomez* (C.A.1, 1985), 770 F.2d 251, 254.

{¶18} We first address Wallen's argument that the trial court erred in finding that she had no standing to challenge the search of Handley's trailer because the trial court had found the search unconstitutional as to Handley. In support, Wallen cites *State v. Christian*, 6th Dist. No. F-04-003, 2004-Ohio-3000, ¶15, following *McDonald v. United States* (1948), 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153.

{¶19} In *Christian*, supra, the defendant, Christian, was charged with knowingly consuming alcohol while under the age of twenty-one. The charge stemmed from a search of Alan Utz's apartment, which resulted in Utz being charged with contributing to the delinquency of a minor as well as knowingly consuming alcohol while under the age of twenty-one. The Sixth Appellate District found that the search conducted was illegal as to Utz, and, although Christian lacked standing to challenge the search, concluded that, "[w]hen a defendant with proper standing moves for suppression of illegally-seized evidence, and his motion is granted, the evidence cannot be used against any codefendant." 2004-Ohio-3000, at ¶15, citing *McDonald,* 335 U.S. at 456; *United States v. Graham* (C.A.6, 1968), 391 F.2d 439, 445-46, certiorari denied (1968), 393 U.S. 941; *United States v. Pepe* (C.A.2, 1957), 247 F.2d 838, 841; *United States v. Serrano* (C.A.2, 1963), 317 F.2d 356. Accordingly, the Sixth Appellate District suppressed the search as to Christian.

{¶20} Similarly, in *McDonald*, supra, the United States Supreme Court in 1948 found a search of an apartment to be unlawful as to the renter of the apartment, but also extended the exclusion of evidence to the renter's codefendant who was present during the search and was jointly tried for carrying on an illegal lottery. 335 U.S. at 456. Although *McDonald* has not been overruled, multiple courts have since criticized the *McDonald* opinion, and have further suggested that "'the Supreme Court may itself have had later doubts as to the scope of *McDonald* * * *.'" *Graham*, 391 F.2d at 445, quoting *Rosencranz v. United States* (C.A.1, 1964), 334 F.2d 738, 741 (Aldrich, J., concurring); *Alderman*, 394 U.S. at 173, fn.7 ("It is not at all clear that the *McDonald* opinion would automatically extend standing to a codefendant. Two of the five Justices joining the majority opinion did not read the opinion to do so and found the basis for the codefendant's standing to be the fact that he was a guest on the premises searched"); *United States v. Jones* (1972), 352 F.Supp. 369, 375 (*Alderman*, supra, "'greatly shakened' the authoritativeness of *McDonald*"); *United States v. Bozza* (C.A.2, 1966), 365 F.2d 206, 223 (pointing out that the Supreme Court's decision in *Wong Sun v. United States* (1963), 371 U.S. 471, is inconsistent with the *McDonald* decision). Additionally, multiple courts have since found that "the situation to which *McDonald* and its progeny is limited" is "a joint trial involving several

defendants." *Graham*, 391 F.2d at 446; *Jones*, 352 F.Supp. at 376, citing 3 Wright, Federal Practice and Procedure, Criminal, Section 674.

**{¶21}** Here, according to the exhibit proffered at Wallen's trial, Handley, whom the trial court found had proper standing, moved for suppression of the illegally-seized evidence found in his house trailer, which the trial court granted. However, we find the situation sub judice to be distinguished from *McDonald*, supra. Wallen and Handley were not codefendants tried together in a joint trial. In fact, the record indicates that these parties were tried separately, as only Wallen's name appears on each citation in the record and the suppression hearing transcript only concerned Wallen. Accordingly, we find that the trial court did not err when it declined to grant Wallen's motion to suppress on the basis that Handley's motion was granted.

**{¶22}** Next, Wallen claims that the trial court should have granted her motion to suppress because she had a reasonable expectation of privacy in Handley's house trailer because her dogs were valuable Pomeranians that she showed and bred; because the house trailer was safe, isolated, and private; because she also operated a kennel where Kalb occasionally groomed the dogs; and, because she and Kalb had a bailment whereby Kalb would take the dogs from Wallen's kennel to groom them. However, it is also undisputed that Wallen did not live in the house trailer or the residence on the property; that she, in fact, never

visited the house trailer; that two other people were storing dogs inside the same house trailer; that the dogs could be heard barking from the residence; that the house trailer had seven windows; that the house trailer was never locked; that Handley, Sonja Kalb, and Handley's son-in-law and granddaughter all had access to the house trailer; and, that Handley had let the dogs out of the house trailer to run.

{¶23} Thus, we find that the facts demonstrate that, although Wallen may have subjectively anticipated privacy, she did not own the house trailer in which her dogs were discovered, did not control the house trailer, and did not regulate access to the house trailer. In consideration of the totality of the circumstances, we find that Wallen did not have a *reasonable* expectation of privacy in the house trailer, and, accordingly, that the trial court did not err in overruling her motion to suppress.

{¶24} Accordingly, we overrule Wallen's first assignment of error.

## ASSIGNMENT OF ERROR NO. II

**THE RECORD CONTAINED INSUFFICIENT EVIDENCE TO SUPPORT MS. WALLEN'S CONVICTION FOR VIOLATING R.C. §955.10[.]**

{¶25} In her second assignment of error, Wallen argues that the record contains insufficient evidence to sustain her conviction under R.C. 955.10. Specifically, Wallen argues that the State failed to prove beyond a reasonable

doubt that the dogs were not "constantly confined to a registered kennel" under the statute. We disagree.

{¶26} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. Sufficiency is a test of adequacy, *State v. Henry*, 3d Dist No. 13-08-10, 2009-Ohio-3535, ¶20, and the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Robinson* (1955), 162 Ohio St. 486, 124 N.E.2d 148, superseded by state constitutional amendment on other grounds as stated in *Smith*, 80 Ohio St.3d 89.

{¶27} Initially, we note that Wallen failed to move for acquittal based on insufficiency of the evidence pursuant to Crim.R. 29. A defendant must make a Crim.R. 29 motion for acquittal at the conclusion of all evidence in order to preserve a claim based on insufficiency of the evidence. *State v. Alvarado*, 3d

Dist. No. 12-07-14, 2008-Ohio-4411, ¶24. Failure to make such a motion results in waiver of all but plain error. Id.; Crim.R. 52(B). Plain error is an "obvious" defect in the trial proceedings, which affected the "substantial rights" of the accused. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. Plain error exists only when the outcome of the trial would clearly have been otherwise but for the error. *State v. Biros* (1997), 78 Ohio St.3d 426, 436, 678 N.E.2d 891.

**{¶28}** Wallen was convicted of failing to require her dogs to wear tags pursuant to R.C. 955.10, which provides:

> **No owner of a dog,** *except a dog constantly confined to a registered kennel***, shall fail to require the dog to wear, at all times, a valid tag issued in connection with a certificate of registration. A dog's failure at any time to wear a valid tag shall be prima-facie evidence of lack of registration and shall subject any dog found not wearing such tag to impounding, sale, or destruction.**

(Emphasis added).

**{¶29}** Tom Price, a Marion County Dog Warden's Office employee, testified that he was dispatched to 4925 Centerville Green Camp Road in Marion County—which the parties stipulated was Mr. Handley's property—on March 14, 2008 after receiving a complaint about nineteen (19) dogs residing on the property. (Apr. 23, 2009 Tr. at 16-19, 39). Price testified that, in response to the

complaint, he "r[a]n a tag check on the property. There [were] no tags. So [he] went out and investigated it." (Id. at 19). Price testified that, when he arrived at the scene, he could hear dogs barking behind the residence, and he could see the dogs "in the trailer through the window." (Id.). After that, Price contacted a Humane Society agent, who obtained a warrant, and then he assisted the agent in transporting the dogs to the pound and the Humane Society. (Id. at 20). When asked who owned the dogs, Price testified that Wallen claimed the dogs at the pound. (Id. at 33-34).

{¶30} Amie Adams, a Marion County Dog Warden's Office employee, testified that she assisted with the March 14, 2008 investigation at Mr. Handley's property. (Id. at 38-39); (Doc. No. 1). Attached to all of the complaints issued to Wallen, except complaint assigned case no. CRB 0800972D, was a copy of an AKC registration certificate for each of the dogs. (Doc. No. 1, attachments); (State's Ex. A). Adams testified that Wallen provided her with these registration certificates when she came to claim the dogs at the pound. (Apr. 23, 2009 Tr. at 44). With respect to case no. CRB 0800972D, Adams testified that a copy of an application for an AKC registration certificate for the dog was attached to the complaint. (Doc. No. 1). Adams further testified that each of the registration certificates Wallen provided matched the descriptions of the dogs for which complaints were issued. (Apr. 23, 2009 Tr. at 45). Each of these registration

certificates listed the owner/breeder as "Cynthia P. Wallen, 4024 Ulsh Rd Caledonia, OH 43314-9463." (Doc. No. 1); (State's Ex. A). Adams also testified that the registration certificate attached to each complaint indicated Cynthia Wallen as the owner of the dogs. (Id. at 46). Adams testified that, when she arrived at Mr. Handley's property, the dogs were not wearing tags, nor were the dogs wearing tags at any time. (Id. at 50). Adams testified that Wallen claimed all the dogs recovered from Mr. Handley's property for which complaints lettered (A) thru (I) were issued. (Id.).

{¶31} Jane Watts, a Marion County Dog Warden's Office employee, testified that the dogs recovered at Centerville Green Camp Road, and for which complaints (A) thru (I) were issued, matched the descriptions and AVID numbers provided on the AKC registration certificates Wallen provided. (Id. at 87-91). Watts identified Wallen as the owner of the dogs who came and picked them up at the pound. (Id. at 92, 104-05). Watts never saw tags on the dogs. (Id. at 107).

{¶32} Viewing this evidence in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence to sustain Wallen's conviction under R.C. 955.10. The evidence demonstrated that Wallen presented AKC registration papers for each of the nine dogs she picked up at the pound and for which she was charged with a failure to have dog tags. (Apr. 23, 2009 Tr. at 45, 87-91). These registration papers all listed Wallen as the dogs' owner, and on

some of the registration papers Wallen was listed as the breeder *and* owner. (See Doc. No. 1, attachments). The description of the dogs and the AVID numbers for the dogs listed on the AKC registration papers matched the dogs Wallen claimed at the pound. (Apr. 23, 2009 at 45-46); (Doc. No. 1, attached); (State's Ex. A). From this evidence, a rational trier of fact could conclude that Wallen owned the nine (9) dogs for which the complaints were issued.

**{¶33}** Wallen, however, argues that the State failed to prove that the dogs were *not* "constantly confined to a registered kennel," and that this is an essential element of the offense. The State argues that whether the dog was "constantly confined to a registered kennel" is an affirmative defense, not an element of the offense it was required to establish. Alternatively, the State argues that the evidence demonstrated that the dogs were not "constantly confined to a registered kennel." We need not decide here whether R.C. 955.10's phrase "except a dog constantly confined to a registered kennel" is an affirmative defense or an element of the offense, because the evidence, when viewed in a light most favorable to the prosecution, demonstrates that Wallen's dogs were not "constantly confined to a registered kennel." The parties stipulated that the dogs were found on Mr. Handley's property at 4925 Centerville Green Camp Road in Marion County. (Apr. 23, 2009 Tr. at 16-19, 39). With respect to this location, Price testified that he "r[a]n a tag check on the property. There [were] no tags." (Id. at 19). R.C.

955.04 requires the registration of kennels, and provides, in pertinent part, that "[t]he payment of such kennel registration fee shall entitle the licensee to not more than five tags, to bear consecutive numbers and to be issued in like manner * * * as the tags provided for in [R.C. 955.08]." Therefore, from the evidence that no dog tags were registered at Mr. Handley's property, a rational trier of fact could infer that no registered kennel was located at that address as well. Furthermore, since the evidence demonstrated that the dogs were found where no dog kennel was registered, the trier of fact could reasonably conclude that the dogs were not "constantly confined to a registered kennel" under R.C. 955.10. 1984 Ohio Atty.Gen.Ops. No. 84-022; 1928 Ohio Atty.Gen.Ops. No. 1521, vol. I, pg. 24.

{¶34} Finally, the evidence demonstrated that the dogs were not wearing tags when found at Mr. Handley's property. (Apr. 23, 2009 Tr. at 50, 107). As such, the State presented sufficient evidence to sustain Wallen's conviction.

{¶35} Since the evidence was sufficient to sustain Wallen's conviction under R.C. 955.10, we cannot conclude that the trial court committed plain error.

{¶36} Wallen's second assignment of error is, therefore, overruled.

{¶37} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**
/jlr