[Cite as *Kaim Properties, L.L.C. v. Mentor*, 2013-Ohio-4291.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| KAIM PROPERTIES, LLC, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-L-055** |
| CITY OF MENTOR, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 11CV000352.

Judgment: Affirmed.


*Joseph R. Klammer*, The Klammer Law Office, Ltd., Lindsay II Professional Center, 6990 Lindsay Drive, #7, Mentor, OH 44060 (For Plaintiff-Appellant).

*Stephen S. Zashin* and *Ami J. Patel*, Zashin and Rich Co., LPA, 55 Public Square, 4th Floor, Cleveland, OH 44113 (For Defendants-Appellees).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Kaim Properties, LLC, appeals the summary judgment of the Lake County Court of Common Pleas in favor of Appellees, City of Mentor; City of Mentor City Council; and John Alesci, Code Enforcement Officer, on Kaim's complaint challenging the constitutionality of Mentor's Rental Housing Maintenance Code. We are

asked to decide whether Mentor's Rental Code violates procedural due process; whether Mentor's failure to provide exceptions for pre-existing uses in its Rental Code constitutes a taking; and whether an administrative warrant can lawfully issue for the inspection of rental properties in the absence of the owner's consent. For the reasons that follow, we affirm.

{¶2} In February 2011, Kaim filed a complaint against appellees, alleging it owns residential rental properties in the city of Mentor. Kaim alleged that the city enacted certain ordinances requiring owners of residential rental properties to obtain a certificate in order to lawfully continue renting such properties. Kaim alleged that these ordinances are unconstitutional; that they violate both substantive and procedural due process; that they are unconstitutionally vague; and that they are unconstitutional on their face and as applied. Kaim sought declaratory and injunctive relief. Appellees filed an answer denying the material allegations of the complaint.

{¶3} Appellees subsequently filed a motion for summary judgment. Kaim filed a brief in opposition and its own summary-judgment motion. In support of appellees' motion, they attached the affidavit of Mentor City Councilman, Edward R. Walsh, who attested:

> {¶4} In the early 1990s, Mentor City Council passed by ordinance a program which required owners and operators of multi-family dwelling units (i.e. apartment complexes) to apply for certificates of occupancy. Prior to obtaining a certificate of occupancy, Mentor inspected these multi-family dwellings for compliance with a variety

2

of health, safety and welfare standards, such as proper ventilation, fire safety, electrical and plumbing. * * *

{¶5} Because council desired to see safe, proper and reasonably maintained rental housing in Mentor, City Council considered expanding Mentor's multi-family dwelling code to include all single-family, duplex and three-family rental housing units in Mentor. Time and experience have suggested that individuals are less likely to maintain rental housing as opposed to their own residences. Consequently, to avoid the potential of neighborhood blight and to promote safe interior conditions, council took action. On October 16, 2007, Mentor City Council amended the existing Multi-Family Dwellings Code to include all single-family, duplex and three-family rental housing. Council passed * * * the Rental Housing Maintenance Code * * *.

{¶6} Further, John Alesci, Mentor's Code Enforcement Officer, stated in his affidavit that in July 2008, he notified Kaim of the adoption of the Rental Housing Maintenance Code and of the necessity of having its properties inspected in order to obtain Rental Dwelling Unit Certificates. Kaim did not respond to the notice. Alesci sent additional notices to Kaim.

{¶7} In July 2009, Alesci issued violation notices to Kaim for its failure to obtain Rental Dwelling Unit Certificates for its seven properties located in Mentor, as required by Mentor Codified Ordinances 1375.03.

3

{¶8} Kaim did not respond to these violation notices.

{¶9} In November 2010, Alesci again issued violation notices to Kaim for its failure to obtain certificates for these properties. Again, Kaim did not respond.

{¶10} The trial court granted summary judgment in favor of appellees; denied Kaim's motion for summary judgment; and dismissed Kaim's complaint. The trial court found that Mentor City Council was an improper party in that it is not an entity capable of being sued. The court further found that Kaim failed to present any evidence in support of its claims against Alesci. Accordingly, the court dismissed these defendants from the action. With respect to the remaining claims against the city of Mentor, the trial court found that Kaim did not have standing to challenge the constitutionality of the Rental Code.

{¶11} Kaim appealed the trial court's judgment, asserting the following for its sole assignment of error:

{¶12} "The trial court erred in award[ing] summary judgment in favor of defendants."

{¶13} Summary judgment is proper when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Frano v. Red Robin International, Inc.*, 181 Ohio App.3d 13, 2009-Ohio-685, ¶12 (11th Dist.). Since a trial court's judgment ruling on a motion for summary judgment involves only questions of law, we conduct a de novo

4

review of the judgment. *DiSanto v. Safeco Ins. of Am.*, 168 Ohio App.3d 649, 2006-Ohio-4940, ¶41 (11th Dist.).

{¶14} Under its assignment of error, Kaim asserts three arguments as to why it believes Mentor's Rental Housing Maintenance Code is unconstitutional: 1) the Code violates procedural due process by not providing for a pre-deprivation hearing; 2) the Code effects a taking; and 3) the Code attempts to coerce consent for the inspection of rental property by means of an unlawful administrative warrant.

{¶15} As a preliminary matter, Mentor urges this court to adopt the trial court's finding that Kaim lacked standing to challenge the constitutionality of the Rental Code. However, based on the analysis that follows, we hold that Kaim had standing to raise its constitutional challenges to Mentor's Rental Code.

{¶16} Kaim brought the present action pursuant to Ohio's Declaratory Judgment Act, Chapter 2721 of the Revised Code. The Act provides that "any person whose rights, status, or other legal relations are affected by a * * * municipal ordinance * * * may have determined any question of construction or validity arising under the * * * ordinance and obtain a declaration of rights, status, or other legal relations under it." R.C. 2721.03.

{¶17} "'Persons whose property rights are directly affected by a statute or ordinance are entitled to obtain a declaratory determination as to the validity of the statute or ordinance.'" *Wilson v. Cincinnati*, 171 Ohio St. 104, 108 (1960) quoting 174 A.L.R., 561, Section 8. "Where a municipal ordinance imposing criminal penalties upon a contemplated act will be enforced against a person if he proceeds with that act, such

5

person has standing to test the validity, construction and application of such ordinance by an action for declaratory judgment * * *." *Peltz v. South Euclid*, 11 Ohio St.2d 128, 131 (1967), paragraph one of the syllabus.

{¶18} In the present case, Mentor's Rental Housing Maintenance Code provides, "it shall be unlawful for the owner, agent, or person in charge of any multi-family apartment structure or single, duplex, or triplex dwelling unit to rent, lease, or permit to be occupied any dwelling unit within said structure, without a current and valid Rental Dwelling Unit Certificate issued by the Engineering and Building Department for each such dwelling unit." Mentor Codified Ordinances 1391.01. "Any person, firm, or corporation who violates any provision of this code shall be guilty of a third degree misdemeanor and, shall be subject to the penalties as set forth in Section 501.99 of the General Offenses Code for third degree misdemeanors." Mentor Codified Ordinances 1391.99.

{¶19} The trial court found that appellant lacked standing based on this court's holding in *Kruppa v. Warren*, 11th Dist. Trumbull No. 2009-T-0017, 2009-Ohio-4927. However, that case is distinguishable. In *Kruppa*, the city had enacted an ordinance, which required owners of non-owner-occupied rental dwellings to apply for a dwelling permit. Kruppa challenged the constitutionality of the code, but the city had not taken any action against him. In contrast, here, Mentor issued numerous notices of violation to appellant, each of which stated that it was in violation of Sections 1375.03 and 1391.09 of the Rental Code. We therefore hold that Kaim had standing to file this action.

6

{¶20} Turning now to Kaim's arguments under its assignment of error, first, it argues that the Rental Code violates procedural due process by failing to provide for a "pre-deprivation hearing." Kaim cites the Ohio Supreme Court's decision in *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, for the proposition that, "while the legislature may elect not to confer a particular property right, it may not constitutionally authorize the deprivation of a property interest, once conferred, without appropriate procedural safeguards." *Id.* at ¶8.

{¶21} Mentor's Rental Code provides that, before a Rental Dwelling Unit Certificate may be obtained, the rental property must be inspected by the Engineering and Building Department to determine its compliance with the Code. Mentor Codified Ordinances 1391.02. "Where a violation of this code is found to exist, a written notice from the Administrator or his designee shall be served upon the person or persons responsible for the correction thereof. Said notice shall specify the violation or violations committed, what must be done to correct same, and a reasonable period of time to correct or abate said violation." Mentor Codified Ordinances 1391.07. Where the owner of rental property "fails * * * to comply with any notice of the Property Maintenance Officer * * *, said owner shall be considered to be in violation of this code and the Property Maintenance Officer shall proceed at law to compel compliance and to prosecute said violation." Mentor Codified Ordinances 1391.09.

{¶22} Rental "[u]nits occupied at the time of adoption of this section[, i.e. October 16, 2007,] may continue to be occupied until such time as an inspection has been made by the property maintenance officer, after which all units shall comply with

all of the provisions of this code." Mentor Codified Ordinances 1391.03. Moreover, an appeal may be taken to the Board of Building and Zoning Appeals "by any persons aggrieved * * * by any order, requirement, [or] decision * * * made by a building inspector or the Administrator in the enforcement or interpretation of the provisions of the Building and/or Zoning Code." Mentor Codified Ordinances 1131.05. "An appeal to the Board shall stay all proceedings in furtherance of the action appealed from," except in cases of "imminent peril to life or property." Mentor Codified Ordinances 1131.05.

{¶23} Based on our review of the pertinent provisions of Mentor's Rental Code, this legislation does not violate procedural due process. The Code expressly provides for notice of violations and the right to appeal such determinations prior to initiation of criminal prosecution, with proceedings stayed pending appeal. The Code also provides for the continuation of existing tenancies at the time of its enactment until inspection.

{¶24} Kaim's reliance on *Mariemont Apt. Assn. v Mariemont*, 1st Dist. Hamilton No. C-050986, 2007-Ohio-173, is misplaced. The rental inspection program held to be unconstitutional by the First District in *Mariemont* differed from Mentor's program in several respects. Under the *Mariemont* program, an owner of rental property had 30 days to correct violations upon inspection, at which time the owner was required to cease renting the unit and cause it to be vacated. *Mariemont, supra*, at ¶6. Although the *Mariemont* program provided for an appeal of the determination, it did not allow any time for deciding the appeal or for a stay of the commissioner's decision longer than 30 days. *Id.* at ¶ 46. If the appeal was not determined within the 30-day period, and there was no guarantee that it would be, a property owner could incur substantial expense in

8

making the repairs required by the commissioner or in ceasing to rent the property. *Id.* In contrast, the Mentor program contains no provisions requiring owners to have the premises vacated in the event of violation and provides for a stay of proceedings during the pendency of an appeal.

{¶25} Additionally, the First District in *Mariemont* cited examples of rental inspection programs found to be constitutional by other courts. In those cases, the municipality was required to provide notice to the property owner of violations, and a request for a hearing stayed all enforcement proceedings. Both of these constitutional safeguards are present in Mentor's inspection program. *Id.* at ¶ 47-48.

{¶26} Thus, we do not agree with Kaim's contention that Mentor's Rental Code deprives rental property owners of an interest in their property without due process.

{¶27} Kaim's second argument is that the Rental Code amounts to a taking. Although described as a "takings" argument, Kaim, in effect, raises an alternative due process argument. Kaim argues that neither zoning nor building ordinances may be enforced against prior, nonconforming structures absent a declaration of a nuisance. We do not agree.

{¶28} The Supreme Court of Ohio has held that "[b]oth conforming and nonconforming uses are subject to ordinances * * * of a police nature predicated upon protection of the public health, safety, welfare, and general good." *C.D.S., Inc. v. Gates Mills,* 26 Ohio St.3d 166, 169 (1986). A "nonconforming use" is a use of property that was lawful prior to the enactment of an ordinance and which may be continued after the

9

effective date of the ordinance, although it does not comply with the new restriction. *Id.* at 168.

**{¶29}** Further, the Supreme Court in *C.D.S.* held that a landowner does not acquire immunity from the city's exercise of its police power because such owner began his original use in compliance with existing laws. *Id.* at 169. "The police power is one of the least limitable of governmental powers, and in its operation often cuts down property rights." *Id.* The Court held that municipalities may require "all building repairs and construction" to conform to *current* building codes. *Id.*

**{¶30}** This court in *Kramer v. Niles Housing Maintenance Board,* 11th Dist. Trumbull No. 2008-T-0004, 2008-Ohio-4978, held that building codes are recognized as valid exercises of the police power. *Id.* at ¶19, citing *Bogen v. Clemmer*, 125 Ohio St. 186 (1932), syllabus. In support of this holding, this court in *Kramer, supra,* referenced R.C. 715.26, which gives to municipalities the power to "[p]rovide for the inspection of buildings * * * and for the removal and repair of insecure, unsafe, or structurally defective buildings * * *." *Id.* This court in *Kramer* held that the Niles Housing Maintenance Code is a valid exercise of the city's police power. *Id.* at ¶25.

**{¶31}** Further, in *Mariemont, supra,* the First District held that an ordinance requiring landlords to obtain rental permits and to have their rental properties inspected did not violate equal protection. The First District held that the purpose of the ordinance was to protect the public from a threat or danger to the health, safety, or welfare of the community and that this purpose was a valid subject of the village's police power. *Id.* at ¶29.

10

{¶32} Moreover, this court in *Kruppa, supra,* held that the "regulation of rental property and the promotion of safe and habitable housing are proper subjects of the city's police power in that they promote the health, safety, or general welfare of the public." *Id.* at ¶41.

{¶33} Thus, an ordinance enacted pursuant to a municipality's police power applies to landowners whose use of their property began in compliance with existing laws, but does not conform to the new law. An ordinance providing for the regulation of rental properties and the promotion of safe and habitable housing is a valid exercise of the police power. The purpose of Mentor's Rental Code is "to protect the public health, safety, and welfare." Section 1375.01. Mentor's Rental Code was thus enacted pursuant to the city's police power. We therefore hold the Rental Code is enforceable against Kaim's use of its properties.

{¶34} Kaim's third and final argument challenging the constitutionality of Mentor's Rental Code is that the provision authorizing the issuance of administrative search warrants to allow for the inspection of rental properties in lieu of the owner's consent violates the Fourth Amendment.

{¶35} The Rental Housing Maintenance Code provides:

{¶36} If any owner, occupant, or other person in charge of a structure subject to the provisions of this code refuses, impedes, inhibits, interferes with, restricts, or obstructs entry and free access to any part of the structure or premises where inspection authorized by this code is sought, the code official shall be permitted to seek, in a

11

court of competent jurisdiction, a warrant for administrative inspection. Any warrant for administrative inspection shall allow for the inspection of the subject structure and premises, and any parts thereof, pursuant to the provisions of this code and shall be so limited in scope. Mentor Codified Ordinances 1391.06.

{¶37} As noted above, the failure to comply with any notice of the Property Maintenance Officer within the time period specified in any notice of violation constitutes a violation of the Code and subjects the owner of rental property to criminal penalties. Mentor Codified Ordinances 1391.09.

{¶38} Kaim relies on *State v. Finnell*, 115 Ohio App.3d 583 (1st Dist.1996), for the proposition that an ordinance, which makes an owner's refusal to consent to an inspection of his property a crime, is unconstitutional. However, *Finnell* is inapposite because, unlike the present case, the ordinances at issue in *Finnell* invoked no warrant procedure. The First District in *Finnell* stated that, while a constitutionally permissible procedure could be established whereby warrants may be obtained on proof that the public need for the inspection outweighed the owner's expectation of privacy, the ordinances involved in *Finnell* did not provide any such procedure. In contrast, Mentor's Rental Code includes a procedure for obtaining a search warrant if the owner refuses to consent to an inspection.

{¶39} Further, even if Section 1391.06, authorizing the city to seek a warrant and/or Section 1391.99, making refusal to consent to an inspection a crime, were held to be invalid, that would not affect the validity of the remainder of the Rental Code in

light of the Code's severability provision. Section 1375.04 of the Rental Code provides that if any "section, paragraph, sentence, clause or phrase" of [the Rental Code] shall be declared invalid for any reason whatsoever, such decision shall not affect the remaining portions of the Code, which shall remain in full force and effect * * *." Thus, if these sections were held to be invalid, the remainder of the Rental Code, e.g., the requirement that the owner apply for a dwelling certificate and the requirement of an inspection, would still be valid and enforceable by way of injunction proceedings. *See generally Machnics v. Sloe*, 11th Dist. Geauga No. 2004-G-2554, 2005-Ohio-935, ¶2-3.

**{¶40}** Finally, we disagree with Kaim's suggestion that the Rental Code is unconstitutional because it authorizes search warrants without probable cause. Section 1391.06 provides that if the property owner refuses consent to inspect, the "code official shall be permitted to seek, in a court of competent jurisdiction, a warrant for administrative inspection." Contrary to Kaim's suggestion, the Code does not authorize, either expressly or by implication, a search warrant without probable cause. The fact that the Code authorizes the inspector to seek a search warrant *from an appropriate court* implies that the applicant must establish probable cause in order to obtain a warrant. Further, it is well settled that the government can obtain a warrant for administrative inspections. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320 (1987). For purposes of an administrative search, probable cause justifying the issuance of a warrant may be based on evidence of an existing violation or on a showing that reasonable legislative standards for conducting an inspection are satisfied. *Id.*

13

**{¶41}** For the reasons stated in the opinion of this court, appellant's assignment of error is overruled. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

**{¶42}** Thinkers as diverse as Thomas Jefferson, Ayn Rand, and Ludwig von Mises have recognized that property rights are the foundation of free society.[1] The connection between private property rights and a democratic society was early recognized in Ohio jurisprudence:

> **{¶43}** The right of private property is an *original* and *fundamental* right, existing anterior to the formation of the government itself; the civil rights, privileges and immunities authorized by law, are *derivative* -- mere *incidents* to the political institutions of the country, conferred with a view to the public welfare, and therefore *trusts* of civil power, to be exercised for the public benefit. * * * Government is the

---

1. "The true foundation of republican government is the equal right of every citizen in his person and property and in their management." Thomas Jefferson to Samuel Kercheval (1816). "Without property rights, no other rights are possible." Ayn Rand, "Man's Rights," *The Virtue of Selfishness* (1963) 94. "All the * * * principles of liberalism—democracy, personal freedom of the individual, freedom of speech and of the press, religious tolerance, peace among the nations— * * * can be realized only within a society based on private property." Ludwig von Mises, *Omnipotent Government* (1944) 48.

14

necessary burden imposed on man as the only means of securing the protection of his rights. And this protection -- the primary and only legitimate purpose of civil government, is accomplished by protecting man in his rights of personal security, personal liberty, and private property. The right of private property being, therefore, an *original right*, which it was one of the primary and most sacred objects of government to secure and protect, is widely and essentially distinguished in its nature, from those exclusive political rights and special privileges * * * which are created by law and conferred upon a few * * *.

(Emphasis sic.) *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 36, quoting *Bank of Toledo v. Toledo & Bond*, 1 Ohio St. 622, 632 (1853).

{¶44} To secure these rights, the Fifth and Fourteenth Amendments to the United States Constitution provide that no person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." The Ohio Constitution, Article I, Section 19, similarly affirms that "[p]rivate property shall ever be held inviolate." While subject to the public welfare, property rights may not be constitutionally abridged unless the justification bears a real and substantial relation to the public health, safety, morals, or general welfare of the public. *Yajnik v. Akron Dept. of Health*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16. In the present case, Mentor's Rental Housing Maintenance Code

violates several fundamental limitations on the government's ability to interfere with private property rights. Accordingly, I dissent.

{¶45} Kaim Properties asserts that the Rental Code unconstitutionally infringes upon its property rights, citing to the long-established line of cases holding that "neither zoning nor building ordinances may be enforced against preexisting, otherwise lawful, nonconforming structures absent a declaration of nuisance." *N. Ohio Sign Contrs. Assn. v. Lakewood*, 32 Ohio St.3d 316, 319, 513 N.E.2d 324 (1987); *Akron v. Chapman*, 160 Ohio St. 382, 116 N.E.2d 697 (1953), paragraph two of the syllabus ("[t]he right to continue to use one's property in a lawful business and in a manner which does not constitute a nuisance and which was lawful at the time such business was established is within the protection of Section I, Article XIV, Amendments, United States Constitution, and Section 16, Article I of the Ohio Constitution, providing that no person shall be deprived of life, liberty or *property* without due process of law") (emphasis sic).

{¶46} The majority concludes otherwise, merely stating that the Rental Code, as "an ordinance enacted pursuant to [the] municipality's police power," may be "applie[d] to landowners whose use of their property began in compliance with existing law, but does not conform to the new law." *Supra* at ¶ 33.

{¶47} Not only does the majority's opinion disregard the constitutional strictures on the government's ability to enact a retroactive rental code, but it also ignores the prohibition of such regulations contained in the Ohio Revised Code: "The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or an amendment to the ordinance, may be

16

continued, although such use does not conform with the provisions of such ordinance or amendment." R.C. 713.15. Thus, unless the condition of a particular rental property prior to 2008 amounted to a nuisance, i.e., an unlawful use, the Mentor Rental Code cannot be enforced against that property.

{¶48} The constitutional infirmity of Mentor's Rental Code, as applied to pre-existing structures, is demonstrated by *Gates Co. v. Housing Appeals Bd. of Columbus*, 10 Ohio St.2d 48, 225 N.E.2d 222 (1967). In *Gates*, the owner of a sixteen-unit apartment building, in which several units had shared toilet facilities and none of the units had bathtubs or showers, was cited for violating Columbus' later-enacted Housing Code. *Id.* The Ohio Supreme Court held that the Housing Code could not be constitutionally enforced against the building's owner. The court explained that, by forcing the apartment owner to pay for improvements "not amounting to the correction of a nuisance" under the threat of substantial monetary fines, the Code was "implicit with confiscation" of the property. *Id.* at 51-52. "To hold otherwise would be to permit the compulsive improvement of any real property merely upon a legislative finding that the improvement is required to promote the public health, safety or morals, rather than upon a factual determination that the continued use of the property without improvement immediately and directly imperils the public health, safety or morals." *Id.* at 52. The same legal principle applies in this case.

{¶49} Kaim Properties further argues that Mentor's Rental Code violates the Fourth Amendment's requirement of probable cause, by authorizing the issuance of

17

administrative search warrants for the inspection of rental properties in lieu of the owner's consent.

{¶50} Kaim Properties relies on *Wilson v. Cincinnati*, 46 Ohio St.2d 138, 346 N.E.2d 666 (1976), and *State v. Finnell*, 115 Ohio App.3d 583, 685 N.E.2d 1267 (1st Dist.1996), for the proposition that "the Fourth Amendment bars prosecution of a person who refuses to permit a warrantless, code-enforcement inspection of his personal residence." *Wilson* at 144, citing *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 529, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Kaim Properties correctly construes Mentor's Rental Housing Maintenance Code as imposing criminal liability on the act of refusing consent to inspection authorized by the Code.

{¶51} In order to legally rent property in Mentor under the Code, owners of rental property must obtain a Rental Dwelling Unit Certificate by consenting to have their property inspected. Mentor Codified Ordinances 1391.02. If they fail to consent to the inspection, the "code official" is authorized to obtain an administrative search warrant. Mentor Codified Ordinances 1391.06. The owner of rental property is finally required to address Notices of Violation and the failure to do so subjects the owner to prosecution. Mentor Codified Ordinances 1391.09. A person who violates "***any provision*** of this [Rental] code shall be guilty of a third degree misdemeanor." (Emphasis added.) Mentor Codified Ordinances 1391.99.

{¶52} In the present case, Kaim Properties violated the Rental Code, not only by failing to obtain a Certificate, but by refusing to give its consent to the inspection of its

18

properties to Mentor city officials. By refusing to give its consent, Kaim Properties' owner is subject to criminal penalties.

{¶53} Mentor argues that *Wilson* and *Finnell* are distinguishable in that the Mentor Rental Code provides for the issuance of administrative search warrants as an alternative to a consensual search. The existence of an alternative means of accessing private property does not render the fact that the Code imposes criminal liability for the refusal to consent to a warrantless search any less odious to the Constitution. "The threat of prosecution unless an owner submits to an inspection is not a permissible method to gain entry into commercial premises." *Finnell*, 115 Ohio App.3d at 589-590, 685 N.E.2d 1267. The city's recourse to the warrant procedure only occurs after the owner of the rental property has refused consent and, thus, subjected himself to criminal prosecution. At the time Kaim Properties refused to give consent, no warrant had been issued. Thus, Kaim Properties was being required to give its consent to a warrantless search, which is expressly forbidden under *Wilson*.

{¶54} "The fundamental principles set forth in the bill of rights in our constitution, declaring the inviolability of private property, * * * were evidently designed to protect the right of private property as one of the primary and original objects of civil society." (Citation omitted.) *Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, at ¶ 36. The retroactive application of the Mentor Rental Code infringes upon that inviolable private property right and, therefore, is unconstitutional. I respectfully dissent and would reverse the judgment of the court below.

19